# United States Court of Appeals
## For the First Circuit

---

No. 01-1787

NEPSK, INC., D/B/A HOULTON CABLE,

Plaintiff, Appellant,

v.

TOWN OF HOULTON,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Gene Carter, U.S. District Judge]
[Hon. Margaret J. Kravchuk, U.S. Magistrate Judge]

---

Before

Torruella, Lynch, and Lipez, Circuit Judges.

---

Roy T. Pierce, with whom Bruce C. Gerrity, and Preti, Flaherty, Beliveau, Pachios & Haley, LLC were on brief, for appellant.

Patrick J. Scully, with whom Joseph J. Hahn, Kate S. Debevoise and Bernstein, Shur, Sawyer & Nelson, P.A. were on brief, for appellee.

---

March 13, 2002

---

**LIPEZ, <u>Circuit Judge</u>.**  This suit arises out of a dispute over a cable franchise for the Town of Houlton, Maine ("Town").  In early 1999, the Town decided not to renew the franchise held by NEPSK, Inc., d/b/a Houlton Cable ("Houlton Cable").  Instead, it sought competitive proposals for a new cable franchise, and eventually awarded the franchise to Houlton Cable's competitor, Pine Tree Cablevision Associates ("Pine Tree").  Houlton Cable then commenced this suit against the Town, alleging multiple violations of the Cable Communications Policy Act of 1984, as amended by the Cable Television Consumer Protection and Competition Act of 1992 and the Telecommunications Act of 1996 (codified in pertinent part at 47 U.S.C. §§ 521-573) (the "Act").  The district court granted the Town's motion for judgment on the pleadings as to two counts of the complaint, based on Houlton Cable's failure to respond to the motion as required by District of Maine Local Rule 7(b).  Several months later, the court entered summary judgment for the Town on the remaining count of the complaint.  Houlton Cable challenges both decisions.  We affirm.

## I.

On April 23, 1984, the Town entered into a cable franchise agreement with Houlton Cable's predecessor, Houlton CATV, Inc.[1]  The franchise ran for a period of 15 years, and was set to expire in April of 1999.  Under federal law, 47 U.S.C. § 546(a)-

---

[1] With the exception of certain services not relevant here, "a cable operator may not provide cable service without a franchise." 47 U.S.C. § 541(b).

-2-

(g), Houlton Cable was entitled to initiate formal renewal procedures by submitting a written request to the Town between April and October, 1996. If neither Houlton Cable nor the Town took action within that six-month window, the renewal process would be governed by the informal procedures set out in § 546(h).

Houlton Cable submitted a renewal proposal in November, 1997, well after the expiration of the six-month period for initiation of formal procedures. For several months, the Town took no action on the proposal. Then, in April of 1998, the Town Council voted to "invite new applications for the Houlton Cable franchise." Consistent with the informal renewal procedures prescribed by § 546(h), the Town scheduled a public hearing to address the cable franchise issue. Following that hearing, in February of 2000, the Town Council decided not to renew Houlton Cable's franchise and to solicit bids from other providers. Minutes from the public hearing and the Town Council's subsequent meeting indicate that Houlton Cable's refusal to provide high-speed Internet access to its subscribers was a major factor in the Town's decision to reject the renewal proposal.

On March 31, 2000, the Town issued a Request for Proposals ("RFP") soliciting proposals for a new, ten-year cable franchise. As the RFP made clear, the Town did not believe it could support more than one franchise. Although it had not undertaken any detailed analysis of the issue, the Town was aware that no municipality in Maine -- including those much larger than Houlton -- was served by more than one cable company. Accordingly,

the Town explained in the RFP that it planned to award only one franchise:

> The Town of Houlton recognizes that it cannot award an exclusive cable television franchise to any applicant. Nevertheless, the Town also recognizes that the Town of Houlton can only feasibly support one cable television franchise at one time. Accordingly, the Town intends to award only one cable television franchise during the next ten year period, which will be the franchise as a result of this RFP process.

The Town received proposals from two parties, Houlton Cable and Pine Tree. After considering both proposals, the Town determined that Pine Tree's "most closely [met] the needs of the Town as determined by public surveys and [the earlier] public hearing." At a meeting in May, 2000, the Town Council voted to reject Houlton Cable's proposal, and to pursue negotiations with Pine Tree.

Houlton Cable then initiated this suit against the Town. Count I of its complaint alleged that the Town violated the Act by failing to comply with the formal renewal procedures set forth in § 546(a)-(g). Count II alleged that the Town had conditioned the renewal of Houlton Cable's franchise on Houlton Cable's willingness to provide high speed internet service to its subscribers. Such a demand, Houlton Cable maintained, violated 47 U.S.C. § 541(b)(3)(D), which prohibits franchising authorities from requiring cable operators to provide certain "telecommunication service[s]" as a condition of a franchise award, and 47 U.S.C. § 544(e), which states that "[n]o State or franchising authority may prohibit, condition, or restrict a cable system's use of any

-4-

type of . . . transmission technology." Finally, Count III alleged that the Town unreasonably refused to award Houlton Cable a "second" franchise, in violation of 47 U.S.C. § 541(a)(1).

After answering the complaint, the Town moved under Fed. R. Civ. P. 12(c) for judgment on the pleadings as to Counts I and II. With respect to Count I, the Town argued that, since neither Houlton Cable nor the Town had initiated formal renewal procedures during the six-month window, the renewal process properly was governed by the informal procedures authorized by § 456(h). In response to Count II, the Town contended that the Act did not apply retroactively to invalidate the terms of the 1984 Franchise Agreement, which provided that the decision as to renewal was committed to the Town's discretion, and would be based in part on "the development of cable services." In the alternative, the Town argued that high-speed internet access is neither a "telecommunication service" nor a "transmission technology," and therefore is not governed by §§ 541(b)(3)(D)(a) and 544(e) of the Act.

Pursuant to Local Rule 7(b) of the District of Maine, Houlton Cable was obligated to respond to the Town's motion within ten days.[2] Houlton Cable did not so respond, and, accordingly, was deemed to have consented to the motion. Thus, on December 7, 2000 -- one day after the ten-day period had expired -- the district

_____

[2] Rule 7(b) has since been amended to permit response "within twenty-one (21) days after the filing of a motion."

court entered judgment for the Town on Counts I and II "per Local Rule 7(b)."

Houlton Cable filed a motion under Fed. R. Civ. P. 59(e), asking the court to reconsider and vacate its December 7 judgment. It argued that the district court could not enter judgment on the pleadings without first satisfying itself that the Town was in fact entitled to judgment as a matter of law. The court granted the motion for reconsideration, but reaffirmed its initial judgment. Rule 12(c), the court noted, does not prescribe any particular standard of decision; therefore, it does not prohibit the entry of judgment on the basis of noncompliance with a local waiver rule, without consideration of the merits of the motion. Given the absence of a direct conflict between Federal Rule 12(c) and Local Rule 7(b), the court concluded that it was entitled to enforce its local rule strictly.

The Town then moved for summary judgment on Count III of Houlton Cable's complaint, arguing that the provisions of § 541(a)(1) governing applications for a second, competitive franchise did not apply to the Town's choice to award an initial franchise to one provider rather than another. The court[3] agreed, and entered judgment for the Town on Count III. Houlton Cable filed a timely notice of appeal, challenging the district court's

---

[3] After the district court dismissed Counts I and II of Houlton Cable's complaint, the parties consented to further proceedings in the case before a magistrate judge. See Fed. R. Civ. P. 73(b). For the sake of simplicity, we refer to both the magistrate judge and the district court judge as the "district court" or the "court."

December 7 grant of judgment on the pleadings as to Counts I and II, its refusal to rescind that judgment under Rule 59(e), and its grant of summary judgment on Count III.

## II.

We turn, first, to the district court's decisions with respect to Counts I and II.  In granting the Town's motion for judgment on the pleadings, the court relied on District of Maine Local Rule 7(b), which then provided:

> Unless within ten (10) days after the filing of a motion the opposing party files written objection thereto, incorporating a memorandum of law, the opposing party shall be deemed to have waived objection.

Houlton Cable conceded that it did not comply with that rule, and that its failure to file a timely response did not constitute "excusable neglect," permitting reconsideration under Fed. R. Civ. P. 60(b)(1).  Thus, Houlton Cable sought relief under Fed. R. Civ. P. 59(e) on the ground that the district court's judgment was based on an error of law.  See Acevedo-Villalobos v. Hernandez, 22 F.3d 384, 390 (1st Cir. 1994) (explaining that Rule 59(e) is the proper vehicle for a party seeking to overturn a judgment on the basis of alleged legal errors).  Maintaining that Rule 12(c) requires a decision on the merits, it argued that the district court erred as a matter of law when it granted the Town's motion for judgment on the pleadings solely on the basis of a local "deemed waiver" rule like Rule 7(b).

Houlton Cable renews that argument on appeal.  We review the district court's initial application of its local rule for

-7-

abuse of discretion.  <u>CMM Cable Rep, Inc.</u> v. <u>Ocean Coast Props.,</u> <u>Inc.</u>, 97 F.3d 1504, 1528 (1st Cir. 1996).  We apply the same standard to the district court's denial of a Rule 59(e) motion to alter or amend the judgment.  See <u>Williams</u> v. <u>Poulos</u>, 11 F.3d 271, 289 (1st Cir. 1993).  However, the court's interpretation of Rule 12(c) of the Federal Rules of Civil Procedure presents a legal question, which we review <u>de</u> <u>novo</u>.  See <u>Sec. & Exch. Comm'n</u> v. <u>Sargent</u>, 229 F.3d 68, 79 (1st Cir. 2000).

Local Rule 7(b) and its predecessor, District of Maine Local Rule 19(c), have been in existence for almost 20 years.[4] Courts in the District of Maine routinely apply such rules in situations where the opposing party fails to file an objection to a motion, regardless of whether the motion is dispositive.  <u>See</u>, <u>e.g.</u>, <u>Cardente</u> v. <u>Fleet Bank</u>, 796 F. Supp. 603 (D. Me. 1992) (Rule 12(b)(6) motion to dismiss); <u>United Transp. Union</u> v. <u>Me. Cent. R.R.</u> <u>Co.</u>, 107 F.R.D. 383, 383-84 (D. Me. 1985) (motion to dismiss for lack of personal jurisdiction and improper venue); <u>Gideon</u> v. <u>Adm'r,</u> <u>United States Small Bus. Admin.</u>, 102 F.R.D. 604 (D. Me. 1984) (motion to dismiss for lack of subject matter jurisdiction); <u>see</u> <u>also</u> <u>Desjardins</u> v. <u>Van Buren Cmty. Hosp.</u>, 969 F.2d 1280 (1st Cir. 1992) (affirming, against First Amendment challenge, district court's order requiring defendant to make a public apology, on ground that district court properly relied on Local Rule 19(c) to find that defendant waived objection to plaintiff's motion to

_____

[4] Local Rule 19(c) provided:  "Unless within 10 days after the filing of a motion the opposing party files a written objection thereto, he shall be deemed to have waived objection."

-8-

compel apology).  Other districts throughout the country have adopted similar rules[5] to "ensure the orderly, efficient, and expeditious management of the extensive motion practice" of the district courts.  McDermott v. Lehman, 594 F. Supp. 1315, 1319 (D. Me. 1984).

We have recognized that "[d]istrict courts enjoy broad latitude" in adopting and administering such local rules.  Air Line Pilots Ass'n v. Precision Valley Aviation, Inc., 26 F.3d 220, 224 (1st Cir. 1994); see also, e.g., Ramsdell v. Bowles, 64 F.3d 5, 7 (1st Cir. 1995) (acknowledging the district court's "great leeway in the application and enforcement of its local rules").  In exercising that discretion, district courts may, where appropriate, "demand adherence to specific mandates contained in the rules." Air Line Pilots Ass'n, 26 F.3d at 224.  For example, in Corey v. Mast Road Grain & Bldg. Materials Co., Inc., 738 F.2d 11 (1st Cir. 1984) (per curiam), the defendants moved for dismissal under Fed.

---

[5] See, e.g., D. Ariz. LR 1.10(i) ("If a motion does not conform in all substantial respects with the requirements of this Rule, or if the opposing party does not serve and file the required answering memoranda, . . . such non-compliance may be deemed a consent to the denial or granting of the motion and the Court may dispose of the motion summarily."); C.D. Ill. LR 7.1(B)(1) ("If no response memorandum is filed within [14 days after service of a motion], the presiding judge will presume there is no opposition and may rule on the motion without further notice to the parties."); N.D. Ind. LR 7.1(a) ("Failure to file a response [within 15 days after service of a motion] may subject the motion to summary ruling."); D.N.H. LR 7.1(b) ("The court shall deem waived any objection not filed in accordance [within 10 days from the date the motion was filed]."); D.N.M. LR-Civ. 7.5(b) ("Failure to serve (or file, if required by these rules) a response in opposition to any motion constitutes consent to grant the motion."); D. Nev. LR-Civ. 7-2(d) ("The failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of the motion.").

R. Civ. P. 12(b) for lack of personal jurisdiction. The district court granted the motion on the basis of the plaintiff's failure to file a timely response, as required by Local Rule 12 of the District of Massachusetts. It later denied the plaintiff's Rule 60(b)(1) motion for relief from the judgment. We affirmed, stating that "[t]he district court was entitled to insist upon compliance with its local rule in these circumstances." Id. at 12 (citing In re Harbour House Operating Corp., 724 F.2d 1, 2-3 (1st Cir. 1983) (strictly applying Rule 3(b) of the First Circuit Rules governing bankruptcy appeals)). Given plaintiff's failure to establish that her tardiness was caused by excusable neglect, we concluded that "the court could properly decline to excuse plaintiff's noncompliance with the local rule." Id.; accord Stanciel v. Gramley, 267 F.3d 575, 579 (7th Cir. 2001) (affirming district court's grant of motion to dismiss on the basis of noncompliance with local rule requiring response within 14 days); Tobel v. City of Hammond, 94 F.3d 360, 361-62 (7th Cir. 1996) ("Plaintiffs' lawyers admit that they were not aware of the Local Rule. This is the end of the matter because the district court clearly has authority to enforce strictly its Local Rules, even if a default results."); Ghazali v. Moran, 46 F.3d 52, 53 (9th Cir. 1995) ("Failure to follow a district court's local rules is a proper ground for dismissal.").

We reached a similar result in United States v. Proceeds of Sale of 3,888 Pounds of Atlantic Sea Scallops, 857 F.2d 46 (1st Cir. 1988). There, the government had filed a forfeiture action in

Rhode Island district court, hoping to obtain title to the value of certain sea scallops it had seized. Roughly one month later, the defendant filed a combined "answer and claim," which the government moved to strike as untimely. The district court granted the motion to strike, based on the defendant's failure to respond within ten days as required by Local Rule 12(a)(2). The government then moved for a default judgment on the ground that the defendant's claim and answer had been stricken. The district court granted that motion as well, reaffirming its decision on the defendant's Rule 60(b) motion for reconsideration.

Again, we affirmed. As in Corey, we concluded that the district court did not abuse its discretion in refusing to grant favorable reconsideration under Rule 60(b)(1) in the absence of a showing of excusable neglect. See id. at 49 (finding that defendant's alleged reliance on erroneous advice from local counsel did not excuse untimely filings). We continued: "We also agree with the district court that a default judgment may stand even where there has been no showing of substantial prejudice to the party benefitting from the default. A district court simply may insist upon compliance with its local rules." Id.

As our holdings in Corey and Sea Scallops make clear, it is within the district court's discretion to dismiss an action based on a party's unexcused failure to respond to a dispositive motion when such response is required by local rule, at least when

the result does not clearly offend equity.[6]   See Pinto v. Universidad de Puerto Rico, 895 F.2d 18, 19 & n.1 (1st Cir. 1990) ("We do not agree with defendant that a court may, without notice, take a failure to respond to a motion to dismiss as a default, warranting dismissal irrespective of substantive merit. . . . To be distinguished is where a court had ordered a memorandum, and, of course, cases where a response was required by rule." (citing Sea Scallops and Corey)).   It is equally clear, however, that a district court cannot enforce its local rules in a way that conflicts with the Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 83(a)(1); Jaroma v. Massey, 873 F.2d 17, 20 (1st Cir. 1989) ("Local district court rules cannot be construed in such a way as

---

[6] We have cautioned that this discretion "is not unbridled." United States v. Roberts, 978 F.2d 17, 20 (1st Cir. 1992).  In Roberts, we held that the district court abused its discretion in denying the government's motion to reconsider an order granting the defendant's motion to suppress certain evidence as unopposed under Maine's Local Rule 19(c) (the predecessor to Rule 7(b)).  Unlike Houlton Cable, the government in Roberts argued that its failure to comply with the local rule was caused by excusable neglect.  We found that argument persuasive, and concluded that "the lower court probably undervalued the worth of the [government's] explanation." Id. at 22.  We also noted that "it would have helped" if the district court had considered several other factors in deciding the government's motion to reconsider.  Id. at 21-22 (listing factors such as the degree of tardiness, the nature of the case, and "the effect of granting (or denying) the motion on the administration of justice").
   This case does not require us to determine whether and how Roberts might apply where, as here, the tardy party failed to offer a "credible explanation of what [went] wrong." Id. at 25.  Houlton Cable does not argue that the district court erred by failing to take into account equitable considerations like those we outlined in Roberts.  Instead, in both the district court and on appeal, Houlton Cable has argued only that the court's strict application of Local Rule 7(b) creates an impermissible conflict with Federal Rule 12(c).  As we explain below, the district court did not err in rejecting that argument.

-12-

to render them inconsistent with applicable provisions of the Federal Rules of Civil Procedure.").

As Houlton Cable points out, we have identified such a conflict in the context of motions for summary judgment filed under Fed. R. Civ. P. 56. Rule 56(e) specifies that, if such a motion is unopposed, the district court may grant summary judgment "if appropriate." "Under this provision it is clear that '[w]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.'" Jaroma, 873 F.2d at 20 (quoting Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 929 (1st Cir. 1983)). Thus, a district court may not automatically grant a motion for summary judgment simply because the opposing party failed to comply with a local rule requiring a response within a certain number of days. Rather, the court must determine whether summary judgment is "appropriate," which means that it must assure itself that the moving party's submission shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Advisory Committee Note to Rule 56 ("Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.").

Given the potential tension between Rule 56(e) and local rules such as the District of Maine's Rule 7(b), we have recognized the need to interpret local waiver rules "so as to preserve [their]

-13-

scope and validity without running afoul of the requirements of Rule 56." Jaroma, 873 F.2d at 20. To that end, in the summary judgment context we read the "deemed waiver" provision of the local rules to extend only to waiver of objection to the moving party's factual assertions. By failing to file the required response within the time prescribed by the applicable local rule, the non-moving party

> waives the right to controvert the facts asserted by the moving party in the motion for summary judgment and the supporting materials accompanying it. The court will accept as true all material facts set forth by the moving party with appropriate record support. If those facts entitle the moving party to judgment as a matter of law, summary judgment will be granted.

Jaroma, 873 F.2d at 21 (emphasis added); see also McDermott, 594 F. Supp. at 1321 (same).

Houlton Cable argues that the district court's obligation to address the merits of a motion for summary judgment should extend as well to Rule 12(c) motions for judgment on the pleadings. It emphasizes that a party seeking judgment on the pleadings under Rule 12(c) will make precisely the same arguments as a party seeking summary judgment under Rule 56; namely, that "no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1368, at 518 (2d ed. 1990); Lefebvre v. Comm'r, 830 F.2d 417, 419 (1st Cir. 1987) (per curiam) (describing standard for Rule 12(c)). The only difference is that a Rule 12(c) motion must be filed at the close of pleadings, and

-14-

must be based solely on the factual allegations in the complaint and answer, whereas a motion for summary judgment may be filed at any time, and may be supported by additional materials such as affidavits, depositions, and the like. <u>Compare</u> Fed. R. Civ. P. 12(c) <u>with</u> Fed. R. Civ. P. 56. Such procedural differences, Houlton Cable maintains, should not obscure the fundamental similarity between the substance of a Rule 12(c) motion on the one hand, and a Rule 56 motion on the other. Given that similarity, Houlton Cable insists that the district court cannot rely on its local rule to grant a Rule 12(c) motion, when it could not do the same if the motion had been filed under Rule 56.

Although that argument is not without force, it ignores an important -- and, in our view, dispositive -- difference between the two federal rules. Unlike Rule 56, nothing in the text of Rule 12(c) compels the court to apply any particular standard when deciding whether to grant or deny a motion for judgment on the pleadings. Rule 12(c) provides that, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." As the district court observed, the rule "poses no standard or regime by which the Court shall decide the issues generated by the motion." By contrast, Rule 56(c) specifically states that summary judgment "shall" be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Moreover, Rule 56 explicitly addresses the possibility that the non-moving party will not respond to the motion, and provides that summary judgment may be entered in such circumstances only "if appropriate." Fed. R. Civ. P. 56(e). Rule 12(c), on the other hand, does not require the court to make any such determination before granting the motion.

Given Rule 12(c)'s silence on the subject, we cannot conclude that the district court's strict enforcement of Local Rule 7(b) creates an impermissible conflict with federal Rule 12(c). As the district court put it, "[t]here is simply no reason contained in [Rule 12(c)] or its intendment to prevent an otherwise appropriate and enforceable rule of default, i.e. Local Rule 7(b), from operating on a motion under Rule 12(c) without consideration by the court of its merits." Accord Tobel, 94 F.3d at 362-63 (affirming grant of motion for judgment on the pleadings based on opposing party's failure to respond as required by local rule); Ghazali, 46 F.3d at 54 (reasoning that standards governing summary judgment motions do not apply to motions to dismiss, and holding that district court did not abuse its discretion in granting motion to dismiss for noncompliance with a local rule specifying requirements for response). We agree, and hold that the district court did not abuse its discretion in insisting on compliance with its local rule and in rejecting Houlton Cable's assertion of legal error under Rule 59(e).

**III.**

We turn to Houlton Cable's claim that the district court erred in granting summary judgment to the Town on Count III of the complaint. As noted, Count III asserted a claim for relief based on an alleged violation of 47 U.S.C. § 541(a)(1), which provides:

> A franchising authority may award, in accordance with the provisions of this subchapter, 1 or more franchises within its jurisdiction; except that a franchising authority may not grant an exclusive franchise and may not unreasonably refuse to award an additional competitive franchise. Any applicant whose application for a second franchise has been denied by a final decision of the franchising authority may appeal such final decision pursuant to the provisions of section 555 of this title for failure to comply with this subsection.

Section 555, in turn, authorizes "[a]ny cable operator adversely affected by any final determination made by a franchising authority under section 541(a)(1)" to appeal that decision to the federal district court in the district in which the cable system is located. 47 U.S.C. § 555(a).

As far as we can tell, the question whether § 541(a)(1) creates a cause of action for a cable provider that lost out in a competitive bidding process for a single franchise is one of first impression. By its terms, § 541(a)(1) governs only applications for a "second" franchise. Thus, the parties agree that § 541(a)(1) does not speak to the Town's decision to award the initial franchise to Pine Tree instead of Houlton Cable. Houlton Cable argues, however, that once the Town decided to award a franchise to Pine Tree, it was obligated to determine whether it also should award Houlton Cable an "additional competitive" franchise. Because

-17-

the Town readily admits that it never even considered that question, Houlton Cable maintains that the outright denial of its franchise proposal was "unreasonabl[e]" within the meaning of § 541(a)(1).

The difficulty with that argument is that Houlton Cable never submitted an application for a "second" franchise. Hence, the Town never refused such an application, unreasonably or not. The RFP made clear that the Town was soliciting bids for a single franchise. Houlton Cable's proposal -- submitted in response to the RFP -- was, therefore, an application for that first, single franchise. Nowhere in its proposal did Houlton Cable indicate that, if the Town decided to grant the initial franchise to Pine Tree, Houlton Cable wished to be considered for a second, competitive franchise.

Houlton Cable concedes as much. However, it maintains that such a desire can be assumed whenever two or more providers submit applications for a single franchise. In Houlton Cable's view, the losing co-applicant necessarily must be considered as an applicant for a second franchise, whether or not it explicitly asked for such treatment. We disagree. It is one thing to apply for a single franchise; it is quite another to apply for a second, competitive franchise. The latter may be far less profitable and, therefore, far less attractive. As a result, it cannot be presumed that an applicant for a first franchise also wishes to be considered for a second, competitive franchise.

-18-

Moreover, as the district court aptly observed, the information a franchising authority -- and a reviewing court -- would consider in assessing an application for a second franchise might be very different from the type of information needed to weigh the strengths and weaknesses of competing applications for a first franchise. The choice of one provider over another implicates questions such as which provider offers the better package of services, and at the best price. By contrast, the decision whether to award a second franchise (once one has been established) raises a different set of concerns: Could the municipality's infrastructure support two cable grids? Would it be technically feasible for a second provider to build its own system over the existing one? Cf. City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 495 (1986) (noting that factors such as "the present uses of the public utility poles and rights-of-way and how [the cable operator] proposes to install and maintain its facilities on them" were relevant to the question whether the City violated the First Amendment by refusing to grant more than one cable franchise).

Of course, both sets of questions could be addressed at once, in the initial selection process. But it does not follow that they must be, or that the Town is obligated to raise the issue of a second franchise sua sponte. Rather, if an applicant like Houlton Cable wishes to be considered for a second franchise in the event it is not chosen for the first, it must make that desire explicit in its proposal. Unless and until Houlton Cable submits

-19-

-- and the Town refuses -- an actual "request" for a "second" franchise, it has no cause for complaint under § 541(a)(1).  See I-Star Communications Corp. v. City of East Cleveland, 885 F. Supp. 1035, 1042 (N.D. Ohio 1995) (dismissing § 541(a)(1) claim based on plaintiff's failure to allege submission, and denial, of an application for a second competitive franchise); cf. City Communications, Inc. v. City of Detroit, 685 F. Supp. 160, 162-63 (E.D. Mich. 1988) (holding that unsuccessful applicant for single franchise could not bring First Amendment challenge to City's decision to award only one franchise until it actually submitted an application for a second franchise, accompanied by a feasibility study, and such application was denied), aff'd on other grounds, 888 F.2d 1081 (6th Cir. 1989).

## IV.

For the reasons set forth above, we affirm the judgment of the district court on Counts I, II, and III.

So ordered.