Justin MOODY, Plaintiff,

v.

CITY OF LEWISTON,
et al., Defendants.

No. CIV. 02–30–P–C.

United States District Court,
D. Maine.

July 31, 2002.

Richard Golden, Clifford & Golden, Lisbon Falls, ME, for Plaintiff.

Edward R. Benjamin, Jr., Thompson & Bowie, Portland, ME, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

Before the Court is Defendant's Motion for Summary Judgment (Docket No. 5), supported by Defendant's Statement of Material Facts (Docket No. 6). Plaintiff has filed no response to the motion.

Plaintiff has filed this action under 42 U.S.C. § 1983, alleging that "Defendant stopped Plaintiff and without consent, or probable cause, searched his person," a search that included unbuckling Plaintiff's pants and allowing them to drop. Complaint at ¶¶ 3–4. At all times relevant to the instant case, Roger Landry was employed by the City of Lewiston as a police officer. *See* Affidavit of Roger Landry attached hereto as Exhibit 1 at ¶ 1. Prior to January 20, 2000, the date of Plaintiffs arrest, Officer Landry had graduated from the Maine Criminal Justice Academy and been certified by the State of Maine to function as a police officer in this state. *See* Exhibit 1 at ¶ 1. As part of Officer Landry's training at the Maine Criminal Justice Academy, he received training in proper arrest procedures, as well as conducting lawful warrantless searches. *See* Exhibit 1 at ¶ 1. As a police officer employed by the City of Lewiston, Officer Landry also received in-house training regarding proper arrest procedures, as well as conducting lawful warrantless searches, and had received such training prior to January 20, 2000. *See* Exhibit 1 at ¶ 1.

On or about January 20, 2000, Officer Landry was riding as a passenger in a marked City of Lewiston police cruiser being driven by Officer Greg Boucher. *See* Exhibit 1 at ¶ 2. While traveling on Park Street in Lewiston, Officers Landry and Boucher saw a Camero approaching them at what Officer Landry felt was an excessive rate of speed. *Id.* At the intersection of Park Street and Birch Street, the vehicle swerved into the snowbank adjacent to the road, putting the passenger tires in the snowbank. *Id.* The vehicle was sliding into the intersection, seemingly unable to stop, and it appeared to Officer Landry that the driver was trying to use the snowbank to help stop the vehicle's forward motion before it slid through the stop sign and into the intersection. *Id.*

Officer Boucher turned the cruiser around, and the officers approached the vehicle from the rear. *See* Exhibit 1 at ¶ 3.

As the officers approached the vehicle, Officer Landry saw the vehicle drive up on a curb, then down off the curb, and come to a stop. *Id.* At this point, Officer Boucher activated his blue lights and pulled to a stop behind the vehicle, due to the erratic vehicle operation the officers had observed. *Id.* Before the officers could get out of the cruiser, Officer Landry saw what appeared to him to be two persons exit the passenger side of the vehicle and run into one of the apartment houses adjacent to where the vehicle as stopped. *Id.* As it was approximately 10:30 p.m. when this occurred, it was difficult to see whether the passengers were male or female, or to determine which apartment they had entered because of the darkness. *Id.*

The license plate on the Camero was "TEX 1," a Maine registered vehicle. *See* Exhibit 1 at ¶ 4. Officer Boucher advised Officer Landry that he had received information a few days earlier from a drug enforcement agent with the Maine Drug Enforcement Agency ("MDEA") that a vehicle with this "TEX 1" plate was believed to be involved in the trafficking of crack cocaine. *Id.* Because of the information from the MDEA, and the actions of the passengers in fleeing into the apartment building, Officers Boucher and Landry requested additional backup units, including a city K–9 unit. *Id.*

A Lewiston K–9 unit arrived at the scene, but that officer advised that his dog was not yet certified for drug searches. *Id.* An Androscoggin County Sheriff's Office Deputy, Corporal James Jacques, was in the area, however, and his dog was certified to do searches for drugs. *Id.* Corporal Jacques came to the scene, and brought his dog over to where the Camero was parked. *Id.*

Prior to the arrival of Corporal Jacques, Officer Landry had taken the license and registration given him by Justin Moody, the driver of the Camero, and returned to the cruiser to run a license and registration check. *See* Exhibit 1 at ¶ 15; *see also* Deposition transcript of Jason Moody at p. 20 (lines 13–25). (The original deposition transcript of Justin Moody is part of the record. Officer Landry also needed to write a summons to Mr. Moody for failing to provide proof of insurance, as he was unable to produce any evidence the vehicle was insured.) *See* Exhibit 1 at ¶ 4.

When Officer Landry went back to his cruiser, other officers arrived at the scene including the Androscoggin County Sheriff with his K–9 dog. *See* Exhibit 2 at pp. 20 (lines 12–25) – 21 (line 12). During the time the dog was searching Mr. Moody, Officer Landry was doing something else and a different officer was involved in the search. *Id.* at pp. 23 (line 3) – 24 (line 25). Mr. Moody believes it was a different officer than Officer Landry who searched him. *Id.* at pp. 24 (line 17) – 26 (line 18). Mr. Moody only has Officer Landry's name because he was the officer who took Mr. Moody's paperwork back to the cruiser and signed the summons he received. *Id.* at p. 26 (lines 3–23). Whatever searching of Mr. Moody and/or his vehicle occurred, it occurred while Officer Landry was in the cruiser parked behind Mr. Moody's vehicle obtaining license and registration information through dispatch and writing a summons for failing to provide proof of insurance. *See* Exhibit 1 at ¶ 4.

Although Officer Landry was the officer who signed the summons that was given to Mr. Moody, he was not involved in any search of Mr. Moody or his vehicle. *See* Exhibit 1 at ¶ 4. Officer Landry never observed Mr. Moody with his pants down as he alleges occurred during a search of his person by some other officer on the

scene. *See* Exhibit 1 at ¶ 4. After Officer Landry completed the paperwork in the cruiser, he returned Mr. Moody's license and registration to him, and also gave him a summons for failing to provide proof of insurance. *See* Exhibit 1 at ¶ 5; *see also* Exhibit 2 at p. 26 (lines 8–23).

The charge against Mr. Moody was later dismissed by the state when he provided evidence that the car had, in fact, been insured on January 20, 2000. *See* Exhibit 1 at ¶ 5. Officer Landry did not arrest Mr. Moody, or use any force against him. *See* Exhibit 1 at ¶ 5; *see also* Exhibit 2 at p. 30 (lines 1–4). Officer Landry also had no role in any alleged search of Mr. Moody's person or his vehicle. *See* Exhibit 1 at ¶ 5; *see also* Exhibit 2 at pp. 23 (line 25) – 24 (lines 1–25). Officer Landry's only role in the police contact with Mr. Moody was to obtain license and registration information, relay that information to dispatch so it could be checked, and complete and deliver a summons to Mr. Moody for failing to have proof of insurance in his vehicle. *See* Exhibit 1 at ¶ 5. Mr. Moody concedes that his vehicle was not stopped by the police, but that the police cruiser pulled up behind him after he had parked the vehicle. Exhibit 2 at p. 16 (lines 11–20).

### Summary Judgment Standard

Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" if, based on the record evidence, a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" when it has thee "potential to affect the outcome of the suit under applicable law." *Nereida–Gonzalez v. Tirado–Delgado*, 990 F.2d 701, 703 (1st Cir.1993). The court reviews the summary judgment record in the light most favorable to the

nonmoving party. *Levy v. FDIC*, 7 F.3d 1054, 1056 (1st Cir.1993). The moving party must demonstrate an absence of evidence supporting the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where this preliminary showing has been met and where the nonmoving party bears the burden of proof at trial, the nonmoving party must go beyond the pleadings to establish the existence of an element essential to that party's case, and on which that party will have the burden of proof at trial. *Id.* at 322, 106 S.Ct. 2548.

> By failing to *file* the required *response* within the time prescribed by the applicable local rule, the non-moving party [here, the Plaintiff], waives the right to controvert the facts asserted by the moving party in the motion for *summary judgment* and the supporting materials accompanying it. The court will accept as true all material facts set forth by the moving party with appropriate record support. *If those facts entitle the moving party to judgment as a matter of law, summary judgment* will be granted.

*Jaroma*, 873 F.2d at 21 (emphasis added); *see also McDermott*, 594 F.Supp. at 1321 (same).

*NEPSK, Inc. v. Town of Houlton*, 283 F.3d 1 (1st Cir.2002).

### Discussion

The claim set forth in the Complaint is to be evaluated under the standards of the Fourth Amendment, and Defendant Landry's conduct must be evaluated under that provision's "reasonableness" standard. Defendant Landry would also be entitled to qualified immunity if a Fourth Amendment violation on his part was even suggested by the uncontroverted facts in the case. In order to defeat that immunity, Plaintiff is required to demonstrate that

his "clearly established" rights have been violated and that "a reasonable officer situated in the same circumstances should have understood that the challenged conduct violated that established right." *Burns v. Loranger,* 907 F.2d 233, 235–36 (1st Cir.1990); *Miller v. Kennebec County,* 219 F.3d 8, 11 (1st Cir.2000).

Here, the undisputed factual record demonstrates ample basis for the reasonableness of Officer Landry's conduct in stopping Plaintiff's vehicle because of its erratic operation. Likewise, ample evidence exists in the record to establish the reasonableness of his citing, by summons, Plaintiff for operating an uninsured vehicle. As to the conduct of the alleged search, there is absolutely no evidence in the record whatever to establish that, in point of fact, Officer Landry participated in such a search. Further, no claim is pleaded, nor is any evidence offered to show, that Officer Landry unreasonably failed to intervene in the conduct of other officers or that their conduct was observed by him to be inappropriate. There is no evidence in fact of any such circumstance in this case. Accordingly, the proof, on this record, fails to demonstrate that any search of the nature alleged was ever conducted by Officer Landry. There is no genuine issue of material fact as to his conduct of the search, the reasonableness of his actions, or any violation by him of the clearly established right of Plaintiff.

Likewise, there is no evidence in the record that would be sufficient to establish any basis for assertion of liability of the City.

Accordingly, it is hereby **ORDERED** that the motion be, and it is hereby, **GRANTED,** and judgment shall enter for Defendants herein.