In re John J. Diamond III          CV-02-384-B    12/13/02  P

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>In re:  John J. Diamond, III</u>

> Civil No. 02-384-B
> Opinion No. 2002 DNH 218 P

<u>MEMORANDUM AND ORDER</u>

John J. Diamond, III, the debtor in a Chapter 7 bankruptcy proceeding, filed a complaint in bankruptcy court seeking damages from one of its creditors, Premier Capital, Inc. and Premier's attorney, Randall Pratt.  Diamond claims that Premier and Pratt violated the Bankruptcy Code's automatic stay, <u>see</u> 11 U.S.C. § 362 (1993 & Supp. 2002), by using coercive negotiation tactics in an attempt to obtain a favorable settlement of a discharge proceeding.  The bankruptcy court dismissed Diamond's complaint for failure to state a claim.  Diamond appeals.

## I.  BACKGROUND

Diamond has worked as a licensed real estate broker for approximately seventeen years.  In October 2000, he filed a Chapter 13 bankruptcy petition in this district that was later

converted to a Chapter 7 proceeding. Premier, an unsecured creditor, subsequently filed a complaint challenging the dischargeability of Diamond's debt. During the course of negotiations to resolve the discharge proceeding, Premier's attorney, Randall Pratt, allegedly told Diamond's attorney, James Molleur, that, if Premier lost, it "would proceed to the New Hampshire Real Estate Commission to have [Diamond's] real estate license taken away from him," Compl. at 14 (Doc. No. 21).

Diamond filed a complaint against both Premier and Pratt in the bankruptcy court alleging that Pratt's statement was an improper attempt to collect, assess, or recover a debt in violation of the automatic stay. See 11 U.S.C. § 362(a). Premier and Pratt moved to dismiss the complaint, arguing that Diamond had failed to state a claim upon which relief could be granted. After a hearing, the bankruptcy court ruled that Pratt's statement could not be construed as a violation of the automatic stay. The court held, *inter alia*, that "lawyers have to be free to - - I can't say use every tactic, but use tactics within bounds to try to negotiate the best deal for their client." Accepting as true the facts alleged in Diamond's

complaint, the court concluded that Pratt's statement did not "go over the line."

Diamond appeals the dismissal of his complaint.


## II.  STANDARD OF REVIEW

I review a bankruptcy court's dismissal of a complaint for failure to state a claim de novo, "tak[e] as true the well-pleaded facts contained in the complaint and dra[w] all reasonable inferences therefrom in the plaintiff's favor." Garrett v. Tandy Corp., 295 F.3d 94, 97 (1st Cir. 2002); see also In re Christo, 192 F.3d 36, 37 (1st Cir. 1999).  I may affirm, modify, or reverse a bankruptcy court's decision or remand for further proceedings.  Fed. R. Bankr. P. § 8013.


## III.  DISCUSSION

This appeal turns on whether Attorney Pratt's threat to report Diamond to the Real Estate Commission can be construed as a violation of the automatic stay.

The filing of a petition in bankruptcy operates as a stay of "any act to collect, assess, or recover a claim against the

debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6). The automatic stay remains in effect unless and until a federal court either disposes of the underlying case or grants relief to a particular creditor. 11 U.S.C. § 362(c)(2). As the First Circuit recently acknowledged, however, "[t]aken to an extreme, the automatic stay could be construed to prohibit all post-petition contact between creditors and debtors pertaining to dischargeable debts, . . . ." In re Jamo, 283 F.3d 392, 399 (1st Cir. 2002). A literal reading of § 362(a), of course, would confound other Code provisions and bankruptcy rules that allow creditors to take certain actions despite the existence of the automatic stay. See, e.g., 11 U.S.C. §§ 362(d) (creditor may request relief from stay itself); 727 (creditor may object to discharge); § 524(c) (creditor may engage in reaffirmation negotiations); Fed. R. Bankr. P. §§ 9019 and 2002. Recognizing this reality, the First Circuit refused to read § 362(a) in isolation. Instead, it held that "while the automatic stay is in effect, a creditor may engage in post-petition negotiations pertaining to a bankruptcy-related reaffirmation agreement so long as the creditor does not engage

in coercive or harassing tactics." In re Jamo, 283 F.3d at 399. Diamond has failed to identify any reason why the court's holding in In re Jamo should not apply with equal force to statements made by counsel in an effort to resolve a discharge proceeding.

There is no litmus test for determining when aggressive post-petition settlement tactics "cross the line" and become coercive or harassing. Settlement negotiations inevitably are coercive in the sense that they involve the use of economic pressure to induce settlement. Yet, when negotiations focus on the immediate risk of an adverse result, no one would regard them as improperly coercive, even though they necessarily involve at least an implied threat that "I will win and make you pay more if you do not settle now." Few would claim improper coercion even when, as they commonly do, negotiators emphasize collateral consequences of an adverse result such as the impact it will have on a litigant's reputation, the potential that it will spawn additional lawsuits or the risk that it might cause a litigant to lose a business or professional license. The First Circuit recognized as much when it observed in the context of bankruptcy proceedings that "[t]he fact one party has a superior bargaining

position does not warrant a court in placing a thumb on the scales." Id. at 401.

What arguably makes this case different is that Pratt allegedly threatened to take adverse action against Diamond in another forum if he did not settle Premier's discharge claim. Reasonable people can disagree as to whether such threats should ever be permitted during settlement negotiations. For example, the drafters of the California Rules of Professional Conduct, presumably believing that all threats of this type are inherently coercive, have determined that a lawyer may never "threaten to present criminal, administrative, or disciplinary charges to obtain an advantage in a civil dispute." Cal. Rules Prof'l. Conduct R. 5-100. In contrast, the American Bar Association has adopted Model Rules of Professional Conduct that permit a lawyer to use a threat to take action in another forum as leverage in settlement negotiations unless the threat is unrelated to the claim under negotiation, the person making the threat lacks a factual or legal basis for either the threat or the underlying claim, or the person making the threat claims to be able to exert improper influence over the threatened proceeding. See ABA

Comm'n on Ethics and Prof'l Responsibility, Formal Op. 363 (1992) (discussing threats of prosecution).

This district follows the Model Rules.[1]  Accordingly, we do not blanketly prohibit a lawyer from threatening to initiate an administrative or disciplinary action against a party during the course of settlement negotiations.  Instead, such threats must be carefully considered in the context in which they are made to determine whether they are improperly coercive or harassing.  A similar approach is warranted in determining when aggressive negotiation tactics of this type violate the automatic stay.

Pratt's alleged threat to report Diamond to the Real Estate Commission and have his licence revoked if he did not settle plainly qualifies as hard bargaining.  Nevertheless, it is not so coercive or harassing, standing alone, as to qualify as a violation of the automatic stay.  Diamond does not allege that

---

[1]  Both this court and the bankruptcy court have adopted the New Hampshire Supreme Court's Rules of Professional Conduct as our standards of professional conduct.  See L.R. 83.5, DR-1; Administrative Order, Bankruptcy Court for the District of New Hampshire, 2090-2(3), DR-1.  While the New Hampshire Rules of Professional Conduct are not identical to the ABA Model Rules, they follow the Model Rules in not adopting a per se prohibition on threatening administrative or disciplinary action during settlement negotiations.

Pratt lacked a good faith basis either for a complaint to the Real Estate Commission or his demand that Diamond's debt should remain non-dischargeable. He does not assert that Pratt claimed an ability to improperly influence the Real Estate Commission. Nor does he claim that the threatened referral was for a matter unrelated to the dispute at issue in the discharge proceeding. In short, all we know about Pratt's alleged threat from reading Diamond's complaint is that he made his threat in an attempt to obtain a favorable settlement of the discharge proceeding. By itself, this is not sufficient to permit a conclusion that the threat was improperly coercive or harassing. Accordingly, Diamond's complaint fails to state a viable claim for relief.[2]

The Bankruptcy Court's order dismissing Diamond's complaint is affirmed.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

December 13, 2002

_____

[2] Diamond does not argue that Pratt's alleged threat qualifies as Theft by Extortion under N.H. Rev. Stat. Ann. § 637:5. Accordingly, I have not attempted to determine whether the threat should be considered coercive because it violates the New Hampshire Criminal Code.

cc:  Michael S. Askenaizer, Esq.
     James S. LaMontagne, Esq.
     Terrie Harman, Esq.