Jaffe v. Catholic Medical Center     CV-02-246-JD   11/24/03
                UNITED STATES DISTRICT COURT FOR THE
                     DISTRICT OF NEW HAMPSHIRE


Jonathan Jaffe, M.D.

     v.                              Civil No. 02-246-JD
                                     Opinion No. 2003 DNH 198
Catholic Medical Center and
Catholic Medical Center
Physician Practice Associates


                         O R D E R


     The plaintiff, Jonathan Jaffe, M.D., brought a claim under

the Americans with Disabilities Act ("ADA") and claims of breach

of contract and breach of the implied covenant of good faith and

fair dealing against his former employer, Catholic Medical Center

("CMC") and Catholic Medical Center Physician Practice Associates

("CMCPPA").[1]


                     Standard of Review

     Summary judgment is appropriate when "the pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no

_____

     [1]The parties no longer distinguish between CMC and CMCPPA
for purposes of this suit.  Dr. Jaffe's claims against the
individual defendant, Raymond Bonito, and his claims against the
other defendants under New Hampshire Revised Statute Annotated §
354-A and for wrongful termination were previously dismissed.

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party. See id. at 255.

## Background[2]

CMCPPA purchased Dr. Jaffe's medical practice in August of 2000. Thereafter, Dr. Jaffe worked as an employee of CMCPPA under an employment agreement. Dr. Jaffe's employment was terminated, effective May 8, 2001.

Dr. Jaffe suffered a cervical spinal cord injury in 1993 in a car accident, which aggravated his preexisting problems with

---

[2]Dr. Jaffe, who is represented by counsel, submitted unsigned affidavits and a copy of unsigned interview notes in support of his objection to summary judgment, and the defendants object to their consideration. Because those materials do not comply with the requirements of Federal Rule of Civil Procedure 56(e), they will not be considered. The materials submitted that do comply with Rule 56(e) will be considered.

balance, but he generally recovered from that injury. In September of 1999, he fell and again injured his cervical spinal cord. The injury from the fall caused short-term paralysis, aggravated his balance problems, and restricted the use of his hands, particularly his left hand. Dr. Jaffe had surgery in January of 2000 to alleviate his symptoms and returned to work six weeks later.

Dr. Jaffe's claims of disability are based on the impairments left after his fall and surgery. In particular, he claims that he has poor balance that causes difficulty in walking and standing, that he has significant impairment in his hands, particularly his left hand, and that his symptoms are aggravated when he is tired. Dr. Jaffe also contends that the defendants' decisions and actions with respect to his medical practice breached his employment agreement and the implied covenant of good faith and fair dealing associated with that agreement.

## Discussion

The defendants contend that Dr. Jaffe cannot meet any of the proof requirements for his ADA claim. They also assert that the facts show that they did not breach the employment agreement or the covenant of good faith and fair dealing. Dr. Jaffe contests the defendants' view of the factual bases for his claims.

3

A.  ADA Claim

Dr. Jaffe's ADA claim is that he was disabled due to the effects of his spinal cord injury and that the defendants terminated his employment because of his disability. "To establish a claim under the ADA, [a plaintiff] must prove by a preponderance of the evidence:  1) that he was disabled within the meaning of the ADA; 2) that he was qualified to perform the essential functions of the job, either with or without a reasonable accommodation; and 3) that the employer took adverse action against him because of the disability." Bailey v. Georgia-Pacific Corp., 306 F.3d 1162, 1166 (1st Cir. 2002).  In support of summary judgment, the defendants contend that Dr. Jaffe cannot prove any of the elements of his ADA claim.

Disability within the meaning of the ADA is "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).  Dr. Jaffe asserts all three bases for disability.

To be substantially limited in performing a major life activity "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are

4

of central importance to most people's daily lives [and] [t]he impairment's impact must also be permanent or long term." Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 198 (2002). Activities such as walking and performing manual tasks are considered major life activities. Id. at 195. Courts assess the severity of the restriction under the guidance of the EEOC regulations, without deciding the validity of those regulations, by considering the "condition, manner, or duration" of the plaintiff's ability to do a particular major life activity as compared to an average person. Calef v. Gillette Co., 322 F.3d 75, 85 (1st Cir. 2003) (quoting 29 C.F.R. § 1630.2(j)(1)); Gillen v. Fallon Ambulance Serv. Inc., 283 F.3d 11, 21 (1st Cir. 2002) (same).

Dr. Jaffe contends that he was disabled by the effects of his spinal cord injury that caused him to have poor balance and to have problems with his left hand.[3] He also contends that his impairments were exacerbated when he was over-tired. His most severe symptoms occurred after surgery in January of 2000, before he was employed by the defendants. He states that he has continued to improve since the surgery. He contends that at present he still tends to weave when he walks, that manual tasks

---

[3]Dr. Jaffe does not claim a disability based on limitations as to his ability to work.

5

take him longer to complete, and that he often requests help with tasks such as buttoning his shirt. He also states that his symptoms worsen with fatigue. He provides no other detail as to the nature, severity, duration, or effect of his claimed impairments.

The defendants point to evidence from his medical records that contradicts Dr. Jaffe's claim of disabling impairment. Dr. Robert Thies's letter, dated January 24, 2001, states that Dr. Jaffe had an "excellent return of strength and coordination" after his surgery in January of 2000 and that his only continuing limitation was difficulty in balancing on one foot. Dr. Thies's medical note, also dated January 24, 2001, records that Dr. Jaffe said that his grip strength was excellent and that he believed that he walked steadily. On examination, Dr. Thies noted that his strength was quite good and that his recovery was excellent. Dr. Thies observed that Dr. Jaffe walked down the hall steadily.

In September of 2001, several months after his employment was terminated, Dr. Drukteinis conducted an independent psychiatric evaluation of Dr. Jaffe on the recommendation of the Medical Review Subcommittee of the New Hampshire Board of Medicine. The evaluation was to address concerns as to Dr. Jaffe's fitness to practice medicine after he was stopped by the Bedford police and appeared to be driving while impaired. Dr.

6

Drukteinis noted that Dr. Jaffe's appearance could be construed as impaired because of mumbled speech, tense demeanor, and balance problems. He concluded, however, that Dr. Jaffe was not impaired in his ability to practice medicine. Dr. Drukteinis did not indicate that Dr. Jaffe's impairment significantly interfered with his ability to walk or to accomplish any other task.

The record also indicates that Dr. Jaffe worked as a physician during his employment with the defendants. He drove his car; he attended physical therapy; and he used a computer apparently without difficulty. Dr. Jaffe claims problems with only his left hand, and he does not indicate which is his dominant hand. He provides almost no detail as to the nature of his impairment during the time that he was employed by the defendants.[4] Construing the limited record in his favor, his impairment apparently caused him to be slower than an average person in doing some activities such as buttoning, opening envelopes, and putting on rubber gloves, and may, at times, have caused some unsteadiness in his walking.

A diagnosis of impairment alone is not enough to establish a disability under the ADA. Williams, 534 U.S. at 198. Moderate restrictions in walking and in doing manual tasks, such as the

_____

[4]Dr. Jaffe was employed by the defendants from August of 2000 until May of 2001.

7

need to use extra effort and time or unsteadiness, are insufficient to support a disability within the meaning of the ADA. See, e.g., Wood v. Crown Redi-Mix, 339 F.3d 682, 685 (8th Cir. 2003); Felix v. New York City Transit Auth., 324 F.3d 102, 105 (2d Cir. 2003); Talk v. Delta Airlines, Inc., 165 F.3d 1021, 1025 (5th Cir. 1999); Penny v. United Parcel Serv., 128 F.3d 408, 414 (6th Cir. 1997); Kelly v. Drexel Univ., 94 F.3d 102, 106 (3d Cir. 1996); Dutcher v. Ingalls Shipbuilding Co., 53 F.3d 723, 726, n.11 (5th Cir. 1995); Dudley v. Hannaford Bros. Co., 190 F. Supp. 69, 74 (D. Me. 2002).

The record, taken in the light most favorable to Dr, Jaffe, shows that at times he may experience moderate restrictions in walking and manual tasks. As such, Dr. Jaffe does not provide record support that his impairments severely restricted his ability to do those activities. Based on the record presented for summary judgment, therefore, Dr. Jaffe has not shown a factual dispute as to whether he had an impairment that significantly affected a major life activity while he was an employee of the defendants.

The second definition of disability, due to a record of disability, "protect[s] those who have recovered or are recovering from substantially limiting impairments from discrimination based on their medical history." Bailey, 306 F.3d

8

at 1169.  Although Dr. Jaffe mentions this theory in passing, he has not developed it and, therefore, the court will not consider it in opposition to summary judgment.  See Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 260 (1st Cir. 1999).

Disability may also be based on the theory that the employer regarded the plaintiff as disabled, and discriminated against him on that basis, due to the employer's mistaken belief that the employee has an impairment that substantially limits a major life activity or that an actual impairment is substantially limiting when it is not.  Bailey, 306 F.3d at 1169 (citing Sutton v. United Air Lines, 527 U.S. 471, 489 (1999)).  "A plaintiff claiming that he is 'regarded' as disabled cannot merely show that his employer perceived him as somehow disabled; rather, he must prove that the employer regarded him as disabled within the meaning of the ADA."  Id.; accord Benoit v. Tech. Mfg. Corp., 311 F.3d 166, 176 (1st Cir. 2003).  Therefore, Dr. Jaffe must show that the defendants mistakenly believed that he had specific impairments that substantially limited a major life activity.

Dr. Jaffe provides little explanation for this theory.[5]  In

---

[5]To the extent Dr. Jaffe may have intended to raise an incident when a staff member mistakenly thought he was impaired by alcohol, he has not developed that issue sufficiently to be considered.  In addition, there is no other evidence in the record that the defendants thought Dr. Jaffe was impaired by alcoholism.

his objection to summary judgment, he states only that "there is evidence that CMC at least paid lip service to trying to accommodate plaintiff's physical therapy session and to provide plaintiff with the second doctor that plaintiff needed, and because CMC specifically asked plaintiff if plaintiff wanted to apply for disability benefits in February 2001." Obj. ¶ 25. The evidence he cites consists of three emails to him from CMC administrators.

The first two emails confirm ongoing efforts to find another physician to join his practice and to reduce his work load and note that he was tired. The third email appears to be a response to an inquiry from Dr. Jaffe about his eligibility date for disability. This information does not identify what impairment or impairments the defendants mistakenly believed were disabling nor does it show that the defendants mistakenly believed that any particular impairments significantly affected a major life activity. Instead, Dr. Jaffe's dispute with the defendants during his employment appears to have been that they expected him to work too may hours and did not do enough to find another physician to add to the practice. Therefore, Dr. Jaffe has not shown that a jury issue remains as to whether the defendants regarded him as disabled.

Because Dr. Jaffe cannot carry his burden of proof to show a

10

material factual dispute as to whether he was disabled, the first element of his ADA claim, it is not necessary to consider the remaining elements. However, even if Dr. Jaffe had been able to avoid summary judgment on the question of disability, he has not shown material factual dispute as to the defendants' motivation for terminating his employment.

If Dr. Jaffe had been able to establish a jury question as to a prima facie case in support of his ADA claim, then the defendants would be required to provide a nondiscriminatory reason for their decision. Laurin v. Providence Hosp., 150 F.3d 52, 58 (1st Cir. 1998). Once that burden of production was satisfied, Dr. Jaffe would have to demonstrate a trialworthy issue as to discrimination, that is, he would have to present evidence that the defendants' reason was a sham intended to cover their discriminatory intent. Id.

The defendants invoked the termination without cause provision of the employment agreement when Dr. Jaffe was discharged. In response to Dr. Jaffe's claims, however, the defendants explain that they used that provision to allow him compensation under the agreement, although they did in fact have cause to terminate his employment. The reasons for his termination, offered by the defendants, are that Dr. Jaffe's productivity was declining, his staff was complaining about his

11

personal hygiene, his inattentiveness to his patients, and his treatment of them, patients were making complaints about him, other physicians were not willing to work with him, and patients were leaving the practice. Dr. Jaffe offers explanations, from his point of view, for the problems in his practice but does not provide evidence that sufficiently undermines the defendants' reasons to show a trialworthy issue as to the defendants' discriminatory motive. The defendants are entitled to summary judgment on the ADA claim.

B. <u>The Contract Claims</u>

Dr. Jaffe alleges that the defendants breached the employment agreement by, among other things, failing to honor their promise to limit his work week to thirty-two hours, failing to consult with him on many critical aspects of the practice, failing to hire a second physician for the practice, failing to make appropriate on-call arrangements, and failing to provide the tools necessary for his work. He also alleges that the defendants' actions violated the implied covenant of good faith and fair dealing under the agreement. In his objection to the defendants' motion for summary judgment, Dr. Jaffe argues that the defendants also breached the employment agreement's thirty day notice requirement and breached the purchase and sale

12

agreement by not moving his practice to a new location.[6]

The defendants correctly assert that the employment agreement permitted them to terminate Dr. Jaffe's employment with or without cause and that Dr. Jaffe was responsible for providing on-call coverage. However, the agreement provision for termination without cause requires that the employee be given at least thirty days written notice of the termination decision, which Dr. Jaffe asserts did not happen in his case. In addition, while Dr. Jaffe was responsible for on-call coverage, "[t]he employer agrees to use its best efforts to facilitate acceptable 'on call' arrangements for the Employee." Def. Ex. 1A, Emp. Ag. § 3(f). The provisions of the agreement, along with the factual disputes in the record, preclude summary judgment on Dr. Jaffe's breach of contract claim.

New Hampshire recognizes an implied covenant of good faith and fair dealing in three different contractual circumstances: "those dealing with standards of conduct in contract formation, with termination of at-will employment contracts, and with limits on discretion in contractual performance." Centronics

---

[6]The purchase and sale agreement obligates Dr. Jaffe, as the seller, to assist the defendants, as the buyer, in relocating the practice. Def. Ex. 2A, Pur. & Sale Ag. § 6.2. Therefore, Dr. Jaffe's claim that the defendants breached that agreement by failing to relocate the practice does not appear to state a breach of the terms of the agreement.

13

Corp. v. Genicom Corp., 132 N.H. 133, 139 (1989).  The representations and understandings that Dr. Jaffe asserts were part of the parties' negotiations, before he sold his practice, and the amount of discretion vested in the defendants throughout the employment agreement implicate the covenant of good faith and fair dealing in this case.  Factual issues pertaining to the parties' conduct, which are material to the covenant of good faith and fair dealing, preclude summary judgment on that claim.

Conclusion

For the foregoing reasons, the defendants' motion for summary judgment (document no. 13) is granted as to the plaintiff's claim under the ADA, Count I, but is otherwise denied.  The claims remaining for trial are breach of contract, Count III, and breach of the implied covenant of good faith and fair dealing, Count IV.

Subject matter jurisdiction in this case is premised on the existence of a federal question arising from the ADA claim, 28 U.S.C. § 1331, and supplemental jurisdiction as to the state law claims, 28 U.S.C. § 1367(a).  Although the ADA claim is resolved on summary judgment, the court will continue to exercise supplemental jurisdiction over the state law claims.  Cf. § 1367(c).

14

However, the remaining claims are appropriate for resolution by settlement, and therefore, the court will require the parties to mediate before additional time and resources are expended on a trial. Trial is now scheduled to begin on December 16, 2003. The final pretrial conference, scheduled to be held on December 5, 2003, is continued. Counsel and the parties shall inform the court of their mediation plans on or before December 5. Trial will be continued and rescheduled, if necessary, after mediation has been completed.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

November 24, 2003

cc:  Michael J. Sheehan, Esquire
     Alexander J. Walker, Esquire

15