# United States Court of Appeals
## For the First Circuit

No. 03-1637

SARA DE LA VEGA,

Plaintiff, Appellant,

v.

THE SAN JUAN STAR, INC., a/k/a The San Juan Star

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Héctor M. Laffitte, U.S. District Judge]

Before

Torruella, Selya, and Lipez, Circuit Judges.

Anibal Lugo Miranda for appellant.

Roberto O. Maldonado Nieves for appellee.

August 3, 2004

**LIPEZ, Circuit Judge**. Appellant Sara de la Vega filed an age discrimination claim against her employer, The San Juan Star (the Star), pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621-634, and Puerto Rico's anti-discrimination law, P.R. Laws Ann. tit. 29, § 146-151, also known as "Law 100." After discovery was completed, the Star filed a motion for summary judgment. De la Vega failed to respond within the time allowed under the local rules. On that basis alone, the district court entered summary judgment for the Star. Although de la Vega twice requested reconsideration of the judgment, the district court denied each motion.

We hold that the district court erred when it entered summary judgment as a sanction. Nevertheless, on the basis of our own analysis of the summary judgment record, we affirm the grant of summary judgment to the Star because de la Vega failed to establish a prima facie case of age discrimination.

## I.

We glean the following facts from the summary judgment record. We recount additional facts in the course of our discussion where appropriate.

The Star is a newspaper with circulation throughout Puerto Rico. In May of 1994, the Star hired Sara de la Vega as its Personnel Director. She was 54 years old at the time of her hiring. In 1996, de la Vega was promoted to the position of

Executive Assistant to the President. In this new position, her duties included oversight of the personnel department, administration of vacation and sick leave policies, administration of the health plan, compliance with the collective bargaining agreement, negotiation with union representatives, and any additional responsibilities allocated to her by the President of the Star, Gerardo Angulo. During the period from 1994 to 1998, de la Vega's compensation package gradually increased from approximately $40,000 per year to $100,000 per year.

In 1997, the Star hired Salvador Hasbun as a Marketing Director. On April 28, 1998, the Star promoted Hasbun to the newly created position of General Manager, which required him to oversee the production and sales departments of the Star. Prior to creating this position, Angulo had been overseeing those departments in addition to his duties as President and CEO. Hasbun was 41 years old at the time of this promotion.

In her complaint, de la Vega claimed that her duties were effectively transferred to Hasbun after his promotion, and that she was "stripped of essentially all authority and/or decision making power." She alleged that Hasbun was "less qualified" to perform these duties and that he was entrusted with them because he was a "much younger person." She further claimed, without citing any specific instance, that members of the Star staff attempted to "get rid" of her by submitting her to "humiliating and discriminatory

treatment." Despite these claims, de la Vega retained the title of Executive Assistant to the President and received the same pay and benefits package that she had received prior to Hasbun's promotion.

On September 2, 2000, de la Vega submitted a letter of resignation to Angulo. The letter did not state a reason for her departure, and it made no reference to perceived discrimination or to dissatisfaction with her working conditions. Angulo asked de la Vega to withdraw her resignation and to continue working for the Star. At first she agreed to continue her employment, but on November 13, 2000, she submitted a second letter of resignation. It stated:

> The environment and supervision style you have shown in our work interaction, more or less during the last months, do not permit me to continue [working for the Star]. On multiple occasions I have sat down with you and we have spoken about this matter. Nevertheless[,] during the last months it has intensified and it reached its optimum level on Thursday, November 9.[1]

Again, Angulo asked de la Vega to withdraw her resignation, and again de la Vega agreed to continue working for the Star.

Finally, on February 5, 2001, de la Vega submitted her third and final letter of resignation. In that letter she related an incident occurring on February 2, 2001, in which Angulo had reprimanded her in front of several senior members of the Star's

---

[1]Neither this letter, nor de la Vega's complaint, specified the events of November 9 to which de la Vega referred.

staff after she interrupted a meeting. She referred to past instances in which she had asked Angulo to address such matters in private to avoid embarrassment. She further referred to the "constant hostile confrontation level that you had been showing toward me during the last two years." For a third time, Angulo asked de la Vega to return to her duties at the Star. This time, however, de la Vega refused. In a letter dated April 1, 2001, Angulo reluctantly accepted de la Vega's resignation as Executive Assistant to the President and suggested that she might continue to work for the Star as a consultant.[2]

On or about May 4, 2001, de la Vega filed an age discrimination charge with the Anti-Discrimination Unit of the Puerto Rico Department of Labor and the Equal Employment Opportunity Commission (EEOC). After receiving "right to sue" letters, she brought this action in district court.

## II.

De la Vega filed her complaint on February 26, 2002, alleging that the Star had constructively discharged her from her employment in violation of the ADEA and Puerto Rico's Law 100. The Star filed its response on May 22, 2002. The district court scheduled a trial date of May 28, 2003, and the parties undertook discovery. On February 11, 2003, the Star filed a motion for

---

[2]The record does not indicate whether de la Vega ever performed consulting work for the Star.

summary judgment. Pursuant to local rule 7.1(b) of the District of Puerto Rico, de la Vega's response to this motion was due by February 21, 2003.[3] She did not file a timely response, and the Star filed a motion requesting entry of judgment on February 27, 2003.[4]

On March 4, 2003, the district court granted the Star's unopposed motion for summary judgment. On March 5, 2003, de la Vega filed a motion requesting reconsideration of the judgment; on March 14, 2003, she filed an opposition to the Star's motion for summary judgment. On March 18, 2003, the district court denied de la Vega's motion for reconsideration, admonishing plaintiff's counsel for failing to meet the filing deadline and failing to request an extension of time. On March 21, 2003, de la Vega filed a second motion requesting reconsideration of the judgment; on April 3, 2003, the district court denied that motion without comment.

---

[3]D.P.R. R. 7.1(b) (formerly rule 311.5) provides in relevant part:
> Unless within ten (10) days after the service of a motion the opposing party files written objection thereto, incorporating a memorandum of law, the opposing party shall be deemed to have waived objection.

[4]According to de la Vega's counsel, he had prepared a motion asking for an enlargement of time to file a response to the summary judgment motion, but had inadvertently failed to file the motion with the court. Counsel also claims that he did not learn of the Star's February 27 motion requesting entry of judgment until March 10, 2003.

De la Vega now appeals from the district court's order of March 4, 2003, entering summary judgment in favor of the Star. She argues on appeal that, even when unopposed, the district court may grant a motion for summary judgment only if it concludes that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. In this case, she contends that the district court never undertook this required analysis and instead granted the Star's motion as a sanction against de la Vega for failing to meet the filing deadline for a response to the Star's summary judgment motion. Further, she contends that the Star's motion did not establish its entitlement to summary judgment as a matter of law. We take each of these arguments in turn.[5]

### III.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A fact is material if it carries with it the potential to affect the

---

[5]In addition, de la Vega argues that her failure to file a timely opposition to the Star's motion for summary judgment was not the kind of inexcusable neglect or egregious conduct that would warrant an entry of judgment in favor of the opposing party. Because we hold that the district court improperly granted the Star's summary judgment motion as a sanction against de la Vega, we do not address this argument.

outcome of the suit under the applicable law." One Nat'l Bank v. Antonellis, 80 F.3d 606, 608 (1st Cir. 1996) (citation and internal quotation marks omitted). We review the district court's grant of summary judgment de novo. Id.

Rule 56(e) governs the obligations of adverse parties to respond to a summary judgment motion. It provides in relevant part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e) (emphasis added). We have previously emphasized the import of the last quoted sentence:

> It is well-settled, however, that [the language of Rule 56(e)] does not mean that a moving party is automatically entitled to summary judgment if the opposing party does not respond. . . . [T]he district court cannot grant a motion for summary judgment merely for lack of any response by the opposing party, since the district court must review the motion and the supporting papers to determine whether they establish the absence of a genuine issue of material fact. . . .
> . . . The court must first inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law.

Jaroma v. Massey, 873 F.2d 17, 20 (1st Cir. 1989) (per curiam) (citations omitted); see also NEPSK, Inc. v. Town of Houlton, 283

-8-

F.3d 1, 7-8 (1st Cir. 2002) ("[A] district court may not automatically grant a motion for summary judgment simply because the opposing party failed to comply with a local rule requiring a response within a certain number of days.").

In this case, the district court issued three rulings, none of which determined whether the Star had established undisputed facts entitling it to summary judgment as a matter of law. On March 4, 2003, the district court entered a judgment stating in its entirety: "Plaintiff has failed to respond to Defendant's motion for summary judgment. Accordingly, Defendant's motion is granted and judgment is hereby entered dismissing all claims in favor of the Defendant." On March 18, 2003, the district court denied de la Vega's first motion for reconsideration, stating that "there is <u>absolutely no excuse</u> for a party to miss a court mandated deadline without submitting a simple motion for an extension of time." (emphasis in original). The court suggested that the episode should "be a reminder to Plaintiff's counsel that [t]he law ministers to the vigilant not to those who sleep upon perceptible rights. [A] litigant . . . cannot be routinely rewarded for somnolence and lassitude." (citation and internal quotation marks omitted) Finally, the court's ruling on de la Vega's second motion for reconsideration consisted of a single word: "Denied."

We have noted that "it is within the district court's discretion to dismiss an action based on a party's unexcused failure to respond to a dispositive motion when such a response is required by a local rule." Town of Houlton, 283 F.3d at 7. "It is equally clear, however, that a district court cannot enforce its local rules in a way that conflicts with the Federal Rules of Civil Procedure." Id. In this case, the district court did not comply with Fed. R. Civ. P. 56(e). Rather, the district court appears to have entered summary judgment for the Star solely as a sanction for de la Vega's failure to file a timely response to the Star's summary judgment motion. Rule 56 does not permit such a disposition. The district court's entry of summary judgment as a sanction was an error of law.

**IV.**

Although the district court erred in entering summary judgment as a sanction, the court did not have to accept de la Vega's late filing. We have previously laid out the consequences to parties who do not timely file an opposition to a motion for summary judgment:

> [T]he opposing party, by failing to file [a response] as required by the rule, waives the right to controvert the facts asserted by the moving party in the motion for summary judgment and the supporting materials accompanying it. The court will accept as true all material facts set forth by the moving party with appropriate record support. If those facts entitle the moving party to

-10-

>           judgment as a matter of law, summary judgment
>           will be granted.

Jaroma, 873 F.2d at 21.  Thus, the district court had the authority

to rule on the record as developed by the parties' timely

submissions, taking as true the facts asserted in the summary

judgment motion of the Star so long as they were adequately

supported by the record.  See, e.g., Mendez v. Banco Popular de

P.R., 900 F.2d 4, 7-8 (1st Cir. 1990) (affirming a summary judgment

ruling where the district court based its analysis only on the

timely filings).

We have before us on appeal the elements of the record

that the district court should have considered in analyzing the

summary judgment motion under Rule 56.  Since our review of such a

summary judgment decision would be de novo, we see no purpose in

remanding this case to the district court to conduct the proper

analysis.  Moreover, "[a]n appellate panel is not restricted to the

district court's reasoning but can affirm a summary judgment on any

independently sufficient ground."  Mesnick v. General Elec. Co.,

950 F.2d 816, 822 (1st Cir. 1991).  Therefore, we will address the

merits of the Star's summary judgment motion.[6]

The ADEA makes it unlawful for an employer "to discharge

any individual or otherwise discriminate against any individual

---

[6]Still, we would always prefer to have the benefit of the
district court's analysis of the merits of a party's summary
judgment motion.

with respect to [her] compensation, terms, conditions or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  To prevail on a claim under the ADEA, a plaintiff must first establish a prima facie case.  This requires the plaintiff to show that "(1) she was at least forty years of age; (2) her job performance met the employer's legitimate expectations; (3) the employer subjected her to an adverse employment action (e.g., an actual or constructive discharge); and (4) the employer had a continuing need for the services [the claimant rendered]."  Gonzalez v. El Dia, Inc., 304 F.3d 63, 68 n.5 (1st Cir. 2002) (citing to Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000).

De la Vega contends that the "adverse employment action" she suffered was a constructive discharge.[7]  See Suarez, 229 F.3d at 54 ("Just as the ADEA bars an employer from dismissing an employee because of his age, so too it bars an employer from engaging in a calculated, age-inspired effort to force an employee to quit.  Accordingly, a constructive discharge can ground an employment discrimination claim.").  "To prove constructive discharge, a plaintiff must usually 'show that her working conditions were so difficult or unpleasant that a reasonable person

---

[7]Neither the Star nor de la Vega disputes that she was at least forty years of age, that she met the Star's reasonable employment expectations, or that the Star had a continuing need for the services that de la Vega provided while employed at the Star.

-12-

in [her] shoes would have felt compelled to resign.'" Lee-Crespo

v. Schering-Plough Del Caribe, Inc., 354 F.3d 34, 45 (1st Cir.

2003) (citation omitted).  "It is not enough that the plaintiff

suffered 'the ordinary slings and arrows that workers routinely

encounter in a hard, cold world.'"  Id. (citation omitted).

De la Vega's complaint alleged that:

> [O]n or about June 6, 1997, [de la Vega] was substituted by a less qualified and much younger person.[8]  Thereafter, [her] job performance was subject to a vicious and unreasonable attack.  Although her title as Executive Assistant and Human Resources Manager remained the same, [de la Vega] was stripped of essentially all authority and/or decision making power.  [The Star] was so eager to get rid of [de la Vega] that on more than one occasion she was humiliated before other employees of [the Star].  As a result of this humiliating and discriminatory treatment by [the Star], [de la Vega] was forced to resign involuntarily from her employment effective February 5, 2002.

Despite its reference to "humiliating and discriminatory

treatment," the complaint does not set out any specific instance of

workplace harassment.  Other than the promotion of Hasbun to

General Manager, and the resulting alleged reduction in de la

---

[8]The reference to June 6, 1997, appears to be an error.  Mr. Hasbun was promoted to the position of General Manager on April 28, 1998.  De la Vega has not alleged that the hiring or promotion of any other person at the Star caused her to lose authority or decision-making power.

Vega's authority, the complaint does not set out a single specific allegation of discriminatory conduct.[9]

The Star's summary judgment motion sets out several facts that, if true, adequately refute de la Vega's allegations.[10] Hasbun's affidavit states that, as general manager, he did not supervise de la Vega, did not oversee her work, and did not become involved in the personnel issues for which de la Vega was responsible. It further states that he did not become involved in any of de la Vega's duties after de la Vega resigned in February of 2001. Angulo's affidavit states that, during de la Vega's time at the Star, she was never subject to demotion or adverse disciplinary action and was never threatened with termination. He states that Hasbun was hired to oversee the production and sales departments at the Star, duties for which Angulo himself had previously been responsible. He states that, at all times during de la Vega's

_____

[9]We recognize that a non-moving party cannot rely upon allegations in a complaint to contest a motion for summary judgment. See, e.g., Kelly v. United States, 924 F.3d 355, 357 (1st Cir. 1991) (stating that, in a summary judgment motion, "the nonmovant may not rest upon mere allegations in . . . an unverified complaint or lawyer's brief"). We cite the complaint here only to explain the nature of de la Vega's constructive discharge claim.

[10]The Star also asserts in its summary judgment motion that de la Vega's claim is time barred because she knew or should have known of the adverse employment action when Hasbun was promoted in April of 1998, and therefore had to file her complaint within 300 days after that promotion. See 29 U.S.C. § 626(d); American Airlines v. Cardoza-Rodriguez, 133 F.3d 111, 122-23 (1st Cir. 1998) (discussing timeliness of ADEA claims). Because we find that de la Vega has not established a prima facie case under the ADEA, we do not reach the issue of timeliness.

-14-

employment, she had a larger office than Hasbun and had two assistants while Hasbun had none. Finally, Angulo states that he never discriminated against de la Vega on the basis of her age or for any other reason.

The Star also offers de la Vega's own letters of resignation to refute her claim of age discrimination. While two of the letters mention generally that de la Vega found Angulo's managerial style to be troublesome, they do not recount the kind or number of events necessary to show "harassment so severe and oppressive that staying on the job while seeking redress . . . is 'intolerable.'" Reed v. MBNA Mktg. Sys., Inc., 333 F.3d 27, 33 (1st Cir. 2003) (citation omitted) (discussing the requirements for constructive discharge). Only the final letter recounts a specific instance of alleged harassment: an occasion on which Angulo allegedly reprimanded de la Vega in front of other employees for interrupting a meeting. Moreover, none of the letters alleges discriminatory conduct based on de la Vega's age. Finally, the parties agree that, after each resignation, Angulo asked de la Vega to return to work. This conduct belies any intention by Angulo to force de la Vega to resign by creating a hostile work environment.

To be sure, de la Vega tells a different story in the late filed opposition to the Star's motion for summary judgment. However, as stated above, in the absence of a timely response from de la Vega, the district court could "accept as true all material

-15-

facts set forth by the moving party with appropriate record support." Jaroma, 873 F.2d at 21. On appeal, pursuant to our de novo review, we can do the same. Therefore, on the alleged ground of constructive termination, we conclude that de la Vega cannot sustain a prima facie case of age discrimination under the ADEA. The Star is entitled to summary judgment as a matter of law on de la Vega's ADEA claim.

"Law 100 is the Puerto Rico equivalent of the federal ADEA, providing for civil liability in age discrimination actions." Cardona Jimenez v. Bancomercio de P.R., 174 F.3d 36, 42 (1st Cir. 1999). "Under Law 100, a plaintiff establishes a prima facie case of age discrimination by (1) demonstrating that [she] was actually or constructively discharged, and (2) alleging that the decision was discriminatory." Baralt v. Nationwide Mut. Ins. Co., 251 F.3d 10, 16 (1st Cir. 2001). Thus, like the ADEA, Law 100 requires a plaintiff to demonstrate an actual or constructive discharge as part of a prima facie case of age discrimination.

As stated above, the Star established in its summary judgment motion facts that adequately refute de la Vega's claim of constructive termination. Because de la Vega fails to demonstrate that she was constructively terminated, she cannot establish a prima facie case of age discrimination under Law 100. Therefore, for the same reason that her ADEA claim fails, her Law 100 claim also fails. See Gonzalez, 304 F.3d at 73 n.7 ("The district court

-16-

order dismissing the Law 100 claim must be affirmed as well, since the merits of the age-discrimination claims asserted under the ADEA and Law 100 are coterminous.") (citation omitted).

**<u>Affirmed</u>**.