**Michael C. SWANA, Plaintiff**

v.

**NU VISIONS MANUFACTURING, LLC, Defendant**

**No. CIV.A.02–30186–MAP.**

United States District Court, D. Massachusetts.

Jan. 12, 2005.

Lawrence R. Ehrhard, Law Offices of Lawrence R. Ehrhard, Longmeadow, MA, for Michael C. Swana, Plaintiff.

Patricia A. Zak, Springfield, MA, for Nu Visions Manufacturing, LLC, Defendant.

*MEMORANDUM AND ORDER REGARDING REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT* (Docket Nos. 19 & 38)

PONSOR, District Judge.

In response to this age discrimination case, defendant has filed a Motion for Summary Judgment. The motion was referred to Magistrate Judge Kenneth P. Neiman for Report and Recommendation, and on December 6, 2004, Judge Neiman recommended that the motion be denied.

No objection to this recommendation has been filed by the defendant.

Upon *de novo* review, the Report and Recommendation of Magistrate Judge Kenneth P. Neiman is hereby adopted, without objection. Defendant's Motion for Summary Judgment is hereby DENIED. Judge Neiman's summary of the record clearly indicates that disputed issues of fact make summary judgment inappropriate. In addition, as noted, defendant has filed no opposition to this recommendation.

This case is hereby referred back to Magistrate Judge Neiman for a status conference to determine whether the case can be settled or will need to go to trial. If a trial is necessary, counsel should seriously consider consenting to trial before Magistrate Judge Neiman, as the court's existing criminal docket may delay scheduling of this civil trial before me.

It is So Ordered.

*REPORT AND RECOMMENDATION WITH REGARD TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Document No. 19)*

NEIMAN, United States Magistrate Judge.

Michael Swana ("Plaintiff") alleges that his former employer, Nu Visions Manufacturing, LLC ("Defendant"), terminated his employment in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* Defendant's motion for summary judgment has been referred to this court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the court will recommend that Defendant's motion be denied.

I. Background

The following facts are stated in a light most favorable to Plaintiff, the party opposing summary judgment. *See Goldman v. First Nat'l Bank,* 985 F.2d 1113, 1116 (1st Cir.1993). Defendant, f/k/a Nu Visions, Inc., custom manufactures circuit boards. (Pudles Aff. (Document No. 20, Exhibit A) ¶ 2.) On April 24, 1995, Plaintiff was hired by Nu Visions, Inc. as a temporary production control employee. (Swana Dep. (Document No. 20, Exhibit B) at 59–60.) Several years later, in November of 1997, Plaintiff was promoted to "Materials Manager," a title he maintained until his termination on January 17, 2002. (Swana Dep. at 87–88.) As Materials Manager, Plaintiff's duties included tracking, supervising various departments, resource planning, and managing inventory and the computer network, i.e., the "IT" systems. (See *id.* at 87–92, 107, 109–10 and 119–20; Pudles Dep. (Document No. 34, Exhibit D) at 22–23; Pudles Aff. ¶ 11.)

In January of 2000, Steve Pudles ("Pudles") joined Nu Visions, Inc. as general manager. (Pudles Dep. at 13–14.) He was soon given the title of CEO and President and made a five percent shareholder. (*Id.* at 44–45, 88.) At the time, there were seven employees, including Plaintiff, at the senior management level. (*Id.* at 19–20, 95–96.) In April of 2001, however, Pudles fired one of the senior managers, Office Manager Cheryl Kruschwitz. (Swana Aff. (Docket No. 34, Exhibit C) ¶ 7.) Kruschwitz, forty years old at the time, was replaced by a twenty-one year old. (*Id.*)

In May of 2001, as Pudles was preparing the company for an August 23rd sale to Defendant, he informed the remaining senior managers that he was not going to make any more personnel changes. (*Id.* ¶ 2.) According to Plaintiff, Pudles told the managers that if they were willing to stay through the sale, he would make them all vice presidents and stockholders. (*Id.* ¶¶ 2, 11; Swana Dep. at 224–25; Pudles Aff. ¶ 4.)

Meanwhile, in June of 2001, Plaintiff was assigned to work with accountants—providing inventory information to various auditors—in preparation for the sale. (Swana Aff. ¶ 3.) Although Plaintiff had to work on the inventory until well after the sale's closing date, he received no negative feedback on his work. (Pudles Aff. ¶ 8; Swana Dep. at 175–76; Swana Aff. ¶ 3.) Around the same time, Plaintiff was also working with the Profitkey company in its installation of new Profitkey software. (Swana Dep. at 157.) At the end of the installation, Plaintiff was told by Alan Kriefies from Profitkey that the transition between the two programs had gone smoothly. (Swana Dep. at 189.) [1]

The sale of the company to Defendant occurred, as planned, on August 23rd. All employees were laid off but then rehired by Defendant in their same positions and at the same rates of pay. (Pudles Aff. ¶ 5.) Shortly thereafter, however, Plaintiff was relieved of his "IT" duties and subsequently relieved as well of his duties dealing with inventory, shipping, receiving, product control, and the stockroom. (Id. ¶¶ 10–12.) As a result, Plaintiff was left in charge only of creating reports. (Id. ¶¶ 13, 17.) At around the same time, on October 25, 2001, Pudles terminated Richard Croteau, Director of Engineering, who was forty-nine years old, and replaced him with a thirty-five year old. (Swana Aff. ¶ 8.)

On January 17, 2002, Plaintiff, then age forty-six, was fired. (Complaint ¶ 10.) Although Pudles now avers that Plaintiff's work was substandard and that most of his work had been absorbed by others (see Pudles Aff. ¶¶ 10–16), there is no evidence that Plaintiff was given such explanations at the termination meeting. Rather, it appears that Pudles simply told Plaintiff, incorrectly, that he was being discharged because Defendant was eliminating the "Report Writer" position; Plaintiff was the "Materials Manager." (See Swana Dep. at 201.)

Seven months after Plaintiff's discharge, Cheryl Zebold, who was then age thirty-six or thirty-seven, was promoted to the position of "Director of Materials." (Swana Aff. ¶¶ 6, 9.) Zebold continues with some of Plaintiff's former duties and also has duties beyond those of the "Materials Manager." (Id.; Pudles Aff. ¶ 15.)

Plaintiff also points out that of the other six managers present at the May 2001 meeting, only the two who happened to be under the age of forty were given the promised title of vice president. (Swana Aff. ¶ 11.) On the other hand, Plaintiff continues, Kruschwitz and Croteau, as described, were fired and replaced by younger workers; Purchasing Manager Robert Foster, a forty-nine year old, was fired in February of 2002 and initially replaced by the younger Zebold; and Manufacturing Manager Max Kulig, then fifty-five years old, was fired and replaced by a forty-three year old in July of 2002. (Id. ¶¶ 9–10.)

On November 15, 2002, Plaintiff filed this complaint which initially raised two causes of action, an ADEA claim and a claim purporting to arise under Title VII

---

1. While the court must credit Plaintiff's version of the facts, Defendant asserts that the Profitkey transition did not proceed as smoothly as Plaintiff claims. According to Defendant, Bob Todt, who was hired to give advice with respect to the Profitkey upgrade, informed Pudles that the company was not using the Profitkey system to its full capacity, that Plaintiff had "jury-rigged" the system, and that Plaintiff was essentially using Profitkey as a "data dump." (Pudles Aff. ¶ 10; Swana Aff. ¶ 5.) For his part, Plaintiff claims that Pudles merely instructed him to not use Profitkey to create schedules in the way Todt had suggested. (See Swana Dep. at 86–88.)

of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Plaintiff has acceded to the dismissal of the Title VII claim as well as to the dismissal of his request for emotional distress damages under the ADEA. Thus, all that remains is the ADEA claim itself and Defendant's motion for summary judgment with respect thereto. Defendant filed its motion for summary judgment on January 5, 2004. After a lengthy delay due to both the withdrawal of Plaintiff's prior counsel and an agreed-upon period of extended discovery, Plaintiff filed an opposition to Defendant's motion on August 16, 2004. In response, Defendant moved to strike certain "facts" relied upon in Plaintiff's opposition, and the court thereafter heard oral argument.[2]

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Although some facts may be disputed by the parties, the summary judgment standard requires that there be no genuine issue of *material* fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A material fact creates a genuine issue for trial "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505. Substantive law governs materiality, and only disputes over facts that might affect the outcome of the trial are material. *Id.* To avoid summary judgment, a plaintiff must make a sufficient

showing of the elements essential to the case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III. DISCUSSION

Defendant seeks summary judgment on the sole remaining ADEA cause of action. The parties point the court to the familiar three stage, burden-shifting analysis for employment discrimination claims first outlined in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and further explained and refined in *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254–55, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), and *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). *See Benham v. Lenox Sav. Bank,* 118 F.Supp.2d 132, 141 (D.Mass.2000).

At the first stage of the analysis, a plaintiff must establish all four elements of a *prima facie* case of discrimination. *See Gonzalez v. El Dia, Inc.,* 304 F.3d 63, 68 (1st Cir.2002); *Dominguez–Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 430 (1st Cir. 2000). Although the First Circuit has described these elements in various ways, it appears that the most applicable formulation for purposes here is as follows: Plaintiff must prove that (1) he is at least forty years of age, (2) he suffered an adverse employment action, (3) his job performance met his employer's legitimate expectations, and (4) the employer had a continuing need for the services provided by the position from which he was discharged. *Gonzalez,* 304 F.3d at 68 n. 5 (citing *Sua-*

---

**2.** The court granted the motion to strike in part (see Electronic Order dated September 9, 2004) and has not relied on any of the stricken "facts" in preparing this report and recommendation.

*rez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 53 (1st Cir.2000)). *Accord De La Vega v. San Juan Star, Inc.,* 377 F.3d 111, 117 (1st Cir.2004). This *prima facie* burden "is not onerous[;] all that is needed is the production of admissible evidence which, if uncontradicted, would justify a legal conclusion of discrimination." *Brennan v. GTE Gov. Sys. Corp.,* 150 F.3d 21, 26 (1st Cir.1998) (citations and internal quotation marks omitted).

Here, the first two elements of the *prima facie* case are easily met; Plaintiff was over forty years old when he suffered an adverse employment action, termination. The fourth element is also, in essence, undisputed; Defendant had a continuing need for the services provided by the position from which Plaintiff was discharged. To be sure, Defendant does not technically concede that Zebold—in taking the position of "Director of Materials" seven months after Plaintiff's termination—"replaced" Plaintiff. However, Defendant acknowledges that Zebold retained many duties that were performed by Plaintiff as "Materials Manager." Defendant also agrees that Plaintiff's remaining duties were absorbed by others. This is sufficient, in the court's estimation, to satisfy the low *prima facie* hurdle with respect to the fourth element.

■ Defendant, however, does challenge Plaintiff's ability to prove the third element, namely, whether his job performance met Defendant's legitimate expectations. Mindful of the current summary judgment posture, however, as well as the low *prima facie* hurdle, the court believes Plaintiff has the stronger argument. As he testified at his deposition, during his last full year of work, no one "sa[id] anything to [him] to indicate that they were not satisfied with [his] job performance." (Swana Dep. at 190.) Similarly, there is no evidence that Plaintiff was told at his

termination that his work was substandard. Granted, Defendant now contends that Plaintiff's work with the auditors preparing an inventory was deficient and that he had not been using the Profitkey system effectively. (See n. 1, *supra.*) As described, however, Plaintiff never received criticism about his inventory work and, in fact, was praised for the updated Profitkey system.

■ Assuming, as this court does, that Plaintiff has demonstrated a *prima facie* case, "there is a presumption that the employer engaged in impermissible age discrimination." *Koster v. Trans World Airlines,* 181 F.3d 24, 30 (1st Cir.1999) (citation omitted). "To rebut this presumption" at the second stage of the analysis, "the employer must articulate a legitimate non-discriminatory reason for the employee's termination." *Id.* In the court's estimation, Defendant has done so here. For example, Defendant asserts that, at the time of his termination, Plaintiff's work was substandard, his responsibilities had dwindled to simply generating reports, and it was unreasonable to continue to pay a $60,000 salary for this one task. Since there is no direct animus in Defendant's decision to fire an unnecessary (and possibly unproductive) employee, it appears to the court that Defendant has established a non-discriminatory reason for Plaintiff's discharge.

■ At the next stage of the sequential analysis, as the parties are aware, the burden shifts back to the plaintiff to "adduce sufficient creditable evidence that age was a motivating factor in the challenged employment action." *Gonzalez,* 304 F.3d at 69. "The plaintiff-employee may meet [his] burden of proof by showing that the employer's proffered reason for the challenged employment action was pretextual, from which the factfinder in turn may, but

need not, infer the alleged discriminatory animus." *Id.*

Here, Plaintiff attempts to meet his third-stage burden by pointing to various comments made by Pudles. For example, Plaintiff notes that Pudles repeatedly referred to Robert Foster, the since-fired Purchasing Manager, as "Fossil" in the presence of Plaintiff and other employees (Swana Dep. at 205–06); told Plaintiff he wanted to "project a young and vibrant" image of the company (*id.* at 203); and promised all of the senior managers that they would be made vice presidents if they stayed with the company, but promoted only the two managers under forty (*id.* at 224–25). In response, Defendant asserts that Pudles' comments are little more than "stray remarks" and, accordingly, not worthy of protection under the ADEA.

The First Circuit has analyzed a number of "stray remark" situations and, generally, held that "stray workplace remarks ... normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus." *Gonzalez,* 304 F.3d at 69 (citations and internal quotation marks omitted). For example, in *Gonzalez* itself, the court held that several stray remarks made by the plaintiff's supervisor and a human resources director—e.g., calling the plaintiff "Mom" and one who exhibited "old ways"—were not enough to survive summary judgment. *Id.* at 70. *See also Wallace v. O.C. Tanner Recognition Co.,* 299 F.3d 96, 100 (1st Cir.2002) (holding that statements made by employer concerning retirement were "brief, stray remarks, unrelated to the termination decisional process" and are not evidence of discrimination); *Williams v. Raytheon Co.,* 220 F.3d 16, 20 (1st Cir.2000) (remarks made by a supervisor that "the company was run by old, white men" and that "she would favor women and younger people in her hiring" did not support the inference

of discriminatory purpose in the plaintiff's termination).

In the instant case, however, there is more evidence than so-called "stray remarks." For one thing, as the First Circuit has noted, "[a]nother method of establishing pretext is to show that [the employer]'s nondiscriminatory reasons were after-the-fact justifications provided subsequent to the beginning of legal action." *Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 56 (1st Cir.2000). Here, it appears that Plaintiff was never criticized or told that his position had become unnecessary, even though Defendant now asserts that Plaintiff's work had dwindled and was substandard. Indeed, Defendant appears to have fired Plaintiff with little or no explanation. Accordingly, Defendant may well be engaging in an impermissible post *hoc* rationalization for the discharge.

In addition, there remains Plaintiff's allegation that one hundred percent of the managers over forty were "replaced" by younger employees. To be sure, Defendant dismisses Plaintiff's reliance on such statistics, citing in particular *In re Western Dist. Xerox Litig.,* 850 F.Supp. 1079 (W.D.N.Y.1994), in which statistics surrounding the termination of thousands of employees was deemed insufficient to prove a pattern or practice of discrimination. *See id.* at 1083–84. Here, however, the small size of the sample—all five senior managers who were at least forty years old—actually lends credence to Plaintiff's allegation. As the *Xerox* court itself acknowledged, "[w]here the overall number of employees is small, anecdotal evidence [as to what happened to other employees] may suffice." *Id.* at 1084 (citing cases). *See also id.* at 1087 (again opining that anecdotal evidence may help lead a reasonable jury to conclusion regarding pattern or practice of discrimination); *Koster,* 181

F.3d at 34 (admitting anecdotal evidence as to co-employees' fate as "a part of [the plaintiff's own] age discrimination picture"). *But see Goldman,* 985 F.2d at 1119 (holding that certain anecdotal evidence, by itself, cannot establish age animus).

In sum, the court believes that Plaintiff has "adduce[d] sufficient creditable evidence that age was a motivating factor in the challenged employment action." *Gonzalez,* 304 F.3d at 69. Accordingly, in the court's estimation, Plaintiff ought to survive Defendant's motion for summary judgment.

### IV. CONCLUSION

For the reasons stated, the Court recommends that Defendant's motion for summary judgment be DENIED.[3]

December 6, 2004.

---

[3]. The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court within ten (10) days of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604 (1st Cir.1980). *See also Thomas v. Arn,* 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.