Augusto PIÑEIRO–RUIZ, Plaintiff,

v.

**PUERTO RICO PORTS AUTHORITY of the Commonwealth OF PUERTO RICO, et al., Defendants.**

Civil No. 04–2376(FAB).

United States District Court,
D. Puerto Rico.

March 31, 2008.

Robert Millan, Millan Law Office, San Juan, PR, for Plaintiff.

Linda S. Rodriguez–Gardeslen, Landron & Vera LLP, Guaynabo, PR, Jose E. Cespedes–Sabater, Manuel A. Nunez Law Office, San Juan, PR, for Defendants.

## OPINION AND ORDER

BESOSA, District Judge.

Mr. Augusto Piñeiro–Ruiz began to work for the Puerto Rico Ports Authority ("PRPA") in August, 1982. During his tenure at the PRPA he worked as a "Maintenance Supervisor for the Electrical System" at the Luis Muñoz Marin International Airport. (*See*, PRPA's Statement of Uncontested Material Facts "SUMF", ¶ 1). As a Supervisor of Electronic Systems, Mr. Piñeiro was responsible for the general maintenance of the electronic systems of the airport. He also supervised other employees in the Electronic Systems Division.

On March 24, 2003, Mr. Piñeiro resigned his position. In his resignation letter, Mr. Piñeiro expressed "[t]he basic reason for this resignation is to participate in the retirement by age and years of service, effective June 30, 2003. The pressures and discredit on my person have forced me to take his decision for the good of my family and my health." (SUMF, ¶ 2, Exh. 9; Plaintiff's Opposing Statement of Material Facts "POSMF", ¶ 2).

On December 15, 2004, Augusto Piñeiro–Ruiz filed suit against the PRPA alleging employment discrimination due to his age and disability, in violation of the Age Discrimination in Employment Act ("ADEA") and the American with Disabilities Act ("ADA"), as well as supplemental state law claims (Docket No. 2). Although he tendered his own resignation, he claims that he was "prompted to early retirement due to the working conditions that he was subjected to and because of defendant's discriminatory actions". (Docket No. 2, ¶ 5.9) According to Mr. Piñeiro, when he reached the age of fifty nine (59), he started to receive constant personal attacks by PRPA's personnel, which later he identified as a pattern of discriminatory conduct against him, because of his age and his mental condition. For instance, he alleges that his supervisors and co-workers referred to him as "the old man" (el viejo), the "grumpy old man" (el viejo cascarrabias) and told him that he "could not give

the extra mile or that he was no longer needed". *Id.*, ¶ 5.4 He named, among other co-workers and supervisors, Engineer Victor M. Andino, Engineer Segarra (deceased) and William Rodriguez as the ones responsible for the alleged discriminatory actions. He further claims that his duties and responsibilities were taken away and given to Mr. William Rodriguez and that he was deprived of the equipment he needed to perform his job. Finally, he asserts was denied salary raises and merit step increases (pasos por merito).

During his deposition, Mr. Piñeiro admitted that Engineer Segarra did not make comments regarding his age.[1] (SUMF, ¶ 4, Plaintiff's deposition, p. 104, lines 18–89). He also testified that Mr. Rodriguez did not recommend him for a salary raise because "he did not go the extra mile." (SUMF, ¶ 5, Exh. 2 and POSMF, ¶ 5).

On September 20, 2000, Mr. Rodriguez submitted to the Chief of Aviation Bureau, Eng. Cesar Cintron, a recommendation in order for plaintiff to be considered for one merit step increase or an increase in salary. (SUMF, ¶ 5) Based on Mr. Rodriguez's recommendation, Mr. Cintron recommended plaintiff for a salary increase on October 23, 2000. *Id.*

For the years 1999 and 2002, Mr. Piñeiro was not the only managerial employee who was not recommended for a salary increase. (SUMF, ¶ 7, Exhibit 6, Complaint filed by managerial employees in 2001[2]).

As to the alleged deprivation of the equipment he needed to perform his job, he testified that the equipment had to be requested and submitted to the budget personnel once a year, using forms that were provided directly by the Central Office to the Airport's Personnel Office. Once the forms were received, they were distributed to the heads of divisions for their use in requesting equipment. (SUMF, ¶ ¶ 11–12) The equipment requests were provided according to the PRPA's budget for the fiscal year and its priorities. (SUMF, ¶ 13)

Plaintiff was assigned vehicles throughout the years of his employment. (SUMF, ¶ 14[3])

During his deposition, Mr. Piñeiro–Ruiz could not mention one specific instance where Mr. Rodriguez bypassed his instructions to the electricians on duty from 1999 to 2001.

On May 19, 1997, plaintiff wrote a letter to Dr. Herman Sulsona, Executive Director, where he accused his supervisor, Engineer Segarra, of "vicious persecution". At that moment, however, he asserted that Segarra's "action denote political discrimination". Piñeiro–Ruiz made no reference to any discrimination regarding his age or his alleged disability. In addition, in his letter Mr. Piñeiro made no reference to work related problems with Mr. Segarra. (SUMF, ¶ 18)

On January 10, 2008, PRPA moved for summary judgment on plaintiffs' claims

---

1. Defendant's attorney asked Mr. Piñeiro if Segarra "made any derogatory comments regarding you as ... as ... regarding to your age" and Mr. Piñeiro answered: "Specific as to my age, not Mr. Segarra, but Mr. Rodriguez yes". SUMF, ¶ 4, Plaintiff's deposition, p. 104, lines 18–89.

2. Mr. Piñeiro was among the managerial employees who filed the complaint.

3. Although plaintiff admitted he was assigned vehicles, he contends that the vehicles did not meet the requirements to travel on the runways and they could not be used for this reason. Thus, he was forced to rely on other co-workers for transportation.

(Docket No. 80). On February 10, 2008, Plaintiff opposed the motion and voluntarily withdrew his ADA's claim "understanding that the elements necessary to establish a *prima facie* case are lacking". (Docket No. 90, p. 1) For the reasons discussed below, the Court **GRANTS** PRPA's motion for summary judgment.

## DISCUSSION

### A. *Summary Judgment Standard*

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *See also Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52. (1st Cir.2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented, the opposing party has the burden of demonstrating that a trialworthy issue exists that would warrant the court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49 (1st Cir.2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine". "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence" is "insufficient to defeat a properly supported motion for summary judgment." *Id.* at 252. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994).

To assess whether to grant or deny a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

### B. *Age Discrimination in Employment Act*

■ ADEA makes it unlawful for an employer to discriminate against any individual with respect to his terms and conditions of employment or to adversely affect his status as an employee because of such individual's age. *See* 29 U.S.C.

§ 623(a)(1).[4] For a plaintiff to prove an ADEA cause of action, direct or indirect discriminatory evidence can be brought forth to prove that an adverse employment action occurred as a result of a discriminatory practice based on age. The trial court must evaluate the evidence presented as a whole in order to determine if such evidence, whether direct or indirect, is sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by a discriminatory animus based on age. *See Hidalgo v. Overseas Condado,* 120 F.3d 328, 335 (1st Cir.1997) (*citing Le-Blanc v. Great American Ins. Co.,* 6 F.3d 836, 843 (1st Cir.1993)); *Torres–Alman v. Verizon Wireless Puerto Rico, Inc.,* 522 F.Supp.2d 367, 389 (D.P.R.2007).

■ As in this case, where a plaintiff lacks direct evidence of discrimination, the courts apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, the plaintiff must first establish a *prima facie* case of age discrimination by demonstrating that (1) he is within the protected class (over the age of forty); (2) that his job performance was satisfactory and met his employer's legitimate expectations; (3) that he suffered an adverse employment action (e.g., an actual or constructive discharge); and (4) that defendant sought a replacement with roughly equivalent job qualifications, thus revealing a continued need for the same services and skills. *See Villegas–Reyes v. Universidad Interamericana de P.R.,* 476 F.Supp.2d 84, 90 (1st Cir.2007); *Pueblo Int'l,* 229 F.3d at 53; *Mesnick v. General Electric Co.,* 950 F.2d 816, 823 (1st Cir.

1991); *Flamand v. American Int'l Group, Inc.,* 876 F.Supp. 356, 368 (D.P.R.1994).

■ Establishing a *prima facie* case generates a rebuttable presumption of discrimination. While the burden of persuasion remains at all times with the plaintiff, the *prima facie* case shifts the burden of production to the employer, who must then articulate a legitimate non-discriminatory reason for the adverse employment action. *See Mesnick,* 950 F.2d at 823. "This entails only a burden of production, not a burden of persuasion; the task of proving discrimination remains the claimant's at all times." *Id.* (*citing Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Medina–Muñoz,* 896 F.2d at 9)(emphasis added). If the employer meets this limited burden, the presumption vanishes and the plaintiff must adduce sufficient evidence to demonstrate that age was a motivating factor in the challenged employment action. *Zapata–Matos v. Reckitt & Coleman, Inc.,* 277 F.3d 40, 45 (1st Cir.2002). To do so, plaintiff must show that the proffered reason is pretextual such that discriminatory animus can be inferred. *Gonzalez v. El Dia, Inc.,* 304 F.3d 63, 69 (1st Cir.2002). "It is not enough for a plaintiff to merely impugn the veracity of the employer's justification, he must 'elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive, age discrimination.'" *Mesnick,* 950 F.2d at 824 (*quoting Medina–Munoz,* 896 F.2d at 9).

C. *Defendant's Motion for Summary Judgment*

In this case, it is uncontested that Piñeiro–Ruiz satisfies the age requirement of

---

**4.** This section states that: "It shall be unlawful for an employer (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."

the *prima facie* test. As to whether he suffered an adverse employment action, the parties disagree. PRPA asserts that Piñeiro–Ruiz cannot show that he suffered an adverse employment action during the time he was a member of the protected class. Further, it contends that Piñeiro–Ruiz resigned in order to participate in the retirement by age and years of services.

Mr. Piñeiro–Ruiz, in turn, denies that he voluntarily resigned to his job. Instead, he asserts that the reason why he was resigning and seeking retirement was because "the pressure and discredit on his person" and that he made the decision "for the good of his family and his health". (Docket No. 90, p. 5) Thus, he alleges that he was forced to resign under circumstances that amounted to constructive discharge. He also claims that the adverse employment action stems from plaintiff's alienation by his supervisors whereby orders to his subordinates were bypassed and the equipment and materials requested by him to perform his duties were not provided. This conduct, which spanned from around 1997 to the year 2003, resulted in his requesting of early retirement because of the pressure that he was subjected to by his supervisors. As further grounds for his age discrimination claim, Piñeiro–Ruiz points to various comments allegedly made by his supervisors, particularly William Rodriguez, which related to his age. He asserts that he was referred by his supervisors as an "old man" (viejo) and "nut" (loco) and that "he was no longer necessary". (Docket Nos. 2 and 90) The Court evaluates plaintiff's contentions in turn.

### 1. *Prima facie Adverse Employment Action*

Plaintiff asserts that he was constructively discharged by the PRPA. In plaintiff's own words, he was forced to request early retirement "due [sic] to the pressure that he was subjected to by his supervisors." (Docket No. 90. *See also* Complaint, p. 8, ¶ 5.9)

■ To prove constructive discharge under the ADEA a plaintiff must show that his working conditions were so difficult or unpleasant that a reasonable person in his shoes would have felt compelled to resign. *Torrech–Hernandez v. General Elec.Co.*, 519 F.3d 41 (1st Cir.2008) (In order for a resignation to constitute a constructive discharge, it effectively must be void of choice or free will); *De La Vega v. San Juan Star*, 377 F.3d 111, 117 (1st Cir.2004), *Lee–Crespo v. Schering–Plough Del Caribe, Inc.*, 354 F.3d 34, 45 (1st Cir. 2003); *Velazquez Fernandez v. NCE Foods, Inc.*, 405 F.Supp.2d 179, 192–193 (D.P.R.2005).

■ To take the measure of a claim of constructive discharge, an inquiring court must gauge whether the working conditions imposed by the employer had become so onerous, abusive, or unpleasant that a reasonable person in the employee's position would have felt compelled to resign. *Suarez v. Pueblo Intern., Inc.*, 229 F.3d 49, 53 (1st Cir.2000) (internal citation omitted). This standard cannot be triggered solely by an employee's subjective beliefs, no matter how sincerely held. *Id.; Calhoun v. Acme Cleveland Corp.*, 798 F.2d 559, 561 (1st Cir.1986). The ultimate test is one of objective reasonableness. *Suarez*, 229 F.3d at 53; *Serrano–Cruz v. DFI P.R., Inc.*, 109 F.3d 23, 26 (1st Cir.1997). The workplace is not a cocoon, and those who labor in it are expected to have reasonably thick skins-thick enough, at least, to survive the ordinary slings and arrows that workers routinely encounter in a hard, cold world. Thus, the constructive discharge standard, properly applied, does not guarantee a workplace free from the usual ebb and flow of power relations and

inter-office politics. *Calhoun,* 798 F.2d at 561; *De La Vega,* 377 F.3d at 117. As it will be explained below, the undisputed facts in this case show that Piñeiro–Ruiz was not constructively discharged. In other words, Piñeiro has failed to show that his working conditions were so difficult or unpleasant that a reasonable person would be forced to resign.

a. Discriminatory comments

■ Discriminatory comments may be probative of discriminatory intent if a plaintiff can "show that discriminatory comments were made by the key decisionmaker or those in a position to influence the decisionmaker." *Giusti Negron,* 260 F.Supp.2d at 410; (*citing Santiago–Ramos,* 217 F.3d at 55). "[I]solated or ambiguous remarks, tending to suggest animus based on age, are insufficient, standing alone, to prove an employer's discriminatory intent". *See Santiago v. Canon U.S.A., Inc.,* 138 F.3d 1, 6, n. 8 and *Speen v. Crown Clothing Corp.,* 102 F.3d 625, 636 (1st Cir.1996). *See also Giusti Negron,* 260 F.Supp.2d at 410 (" '[S]tray workplace remarks,' as well as statements made either by nondecisionmakers or by decisionmakers not involved in the decisional process, normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus.' " (*quoting Gonzalez,* 304 F.3d at 69); *Ezold v. Wolf, Block, Schorr & Solis–Cohen,* 983 F.2d 509, 545 (3rd Cir. 1992)) ("Stray remarks by non-decision makers or by decisionmakers unrelated to the decision process are rarely given

great weight, particularly if they were made temporally remote from the date of decision")

■ In this case, plaintiff contends that various supervisors, Andino, Segarra and Rodriguez, constantly called him "old man" (viejo), "grumpy old man" (viejo cascarrabias) or "crazy man" (loco). Piñeiro–Ruiz, however, testified during his deposition that Segarra did not make comments about his age. Regarding Mr. Andino, plaintiff testified that he could not recall if he made any comments regarding his age but that he remembered he was called "grumpy old man" on only one occasion by Mr. Andino. Again, Mr. Piñeiro–Ruiz could not remember when the comment was made. (Docket No. 80, Exh. 2, pp. 104, 115).[5] As to Mr. Rodriguez, he only remembered one comment made by him: "old man" or "look, nut, come over here". Those comments were allegedly made when Rodriguez called plaintiff to give him instructions.

Mr. Piñeiro–Ruiz has failed to establish any connection between the alleged discriminatory statements and PRPA's alleged decision to terminate him (if indeed it was a termination). In addition, even if the supervisors made the remarks attributed to them by Piñeiro–Ruiz, the Court believes that these remarks would be insufficient to meet his burden in an ADEA case. *See Torres–Alman,* 522 F.Supp.2d at 391; *Colom Gonzalez v. Black and Decker, PR, LLC.,* 193 F.Supp.2d 419, 422 (D.P.R.2002) ("old man", "grandfather" and "uncle" remarks made to plaintiff do

---

**5.** Specifically, when he was asked about the alleged remarks he testified:

"Q: But did Segarra ever made any derogatory comments regarding you as ... as ... regarding to your age?
A: Specific as to my age, not Mr. Segarra, but Mr. Rodriguez yes." *Id.,* p. 104

"Q: Did Mr. Andino make any comments towards you regarding your age as you said Mr. Rodriguez did?
A: Specifically as to age, I don't recall his [sic] having done it, but he did say that about the cranky old man, referring to me"
Q: Okay. The thing about the grumpy old man, was that one time?
A: Yes, on one occasion." *Id.,* p. 105.

not amount to direct evidence of age discrimination under ADEA because they were made two years before his termination and were "nothing more than stray remarks which fail to satisfy [plaintiff's] burden of production of direct evidence."); *Dominguez v. Eli Lilly and Co.,* 958 F.Supp. 721, 739 (D.P.R.1997) (comments that some employees were "very old and sick" and could no longer compete with more educated, youthful employee, was stray, isolated remark); *see also Phelps v. Yale Security, Inc.,* 986 F.2d 1020, 1026 (6th Cir.1993), cert. denied, 510 U.S. 861, 114 S.Ct. 175, 126 L.Ed.2d 135 (1993) (factory manager's comments that plaintiff was too old to be a secretary and that her fifty-fifth birthday was a cause for concern were isolated, ambiguous remarks insufficient to support a finding of age discrimination); *Shenker v. Lockheed Sanders, Inc.,* 919 F.Supp. 55, 60–61 (D.Mass.1996) (supervisor's remarks that plaintiff could handle a layoff better than other employees because he was older and that management should not feel attached to older employees were insufficient to warrant a finding of age discrimination).

Although these comments may well have struck Mr. Piñeiro–Ruiz subjectively, a reasonable employee in his position would not have treated them as leaving him no real choice but to resign. *Torres–Alman,* 522 F.Supp.2d at 392. (*Citing Calhoun,* 798 F.2d at 561 (explaining that employees may not be unreasonably sensitive to their working environment))

b. Change in the conditions of employment and salary

Plaintiff also alleges that he was deprived of equipment and materials needed to carry out his duties effectively. (Docket No. 89, p. 3) He further asserts that his duties and responsibilities were taken away and given to Mr. William Rodriguez. In his opinion, those incidents are sufficient to prove PRPA's adverse employment action.

 During his deposition, however, he testified that he was assigned four vehicles during his time at the PRPA. (Exh. 2, pp. 36–40) He further testified that "[w]hat would happen on certain occasions is that I would go to the warehouse and I would request one out ... beyond the budget" and that "upon receiving the equipment and materials, not all of what was requested was provide [sic] by his division supervisor." (Docket No. 89, Exh. V; Exh. 2, pp. 161). None of those actions constitute evidence that would raise an inference of discrimination on the basis of age. Even when examined in the light most favorable to Piñeiro–Ruiz, his allegations are insufficient to prove that he suffered from an adverse employment action. The fact that he did not receive all the materials he requested, does not constitute a discriminatory animus against him and cannot be an adverse employment action. *See Marrero v. Goya of Puerto Rico, Inc.,* 304 F.3d 7, 23 (1st Cir.2002); (*citing Crady v. Liberty Nat'l Bank and Trust Co.,* 993 F.2d 132, 136 (7th Cir.1993); *Richardson v. New York State Dep't of Correctional Serv.,* 180 F.3d 426, 446 (2d Cir.1999))[6] ("under A.D.E.A. a plaintiff sustains an adverse employment action if he or she endures a '**materially adverse change**' in the terms and conditions of employment. To be 'materially adverse' a change in

---

**6.** Although *Richardson* is a Title VII case, it is applicable here because both the ADEA and Title VII prohibit discrimination with respect to the "compensation, terms, conditions, or privileges of employment ..." 29 U.S.C. sec. 623(a)(1); 42 U.S.C. sec 2000e–2(a)(1) *see also, Austin v. Ford Models, Inc.,* 149 F.3d 148, 152 (2d Cir.)(noting that ADEA and Title VII claims are analyzed under the same legal framework)

working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.' ") Otherwise, "every trivial personnel action that an irritable ... employee did not like would form the basis of a discrimination suit". *Marrero*, 304 F.3d at 23 (internal citations omitted).

■ While adverse employment actions extend beyond readily quantifiable losses, "not everything that makes an employee unhappy is an actionable adverse action." *Phillips v. Bowen*, 278 F.3d 103, 117 (2d Cir.2002) (stating that employee's "trivial complaints about an unpleasant working environment" do not constitute adverse employment actions).

■ As to plaintiff's allegation that his duties were given to Mr. William Rodriguez, he admitted during his deposition that "he insisted [that Mr. Rodriguez] could not supervise me because he did not [have] the knowledge of electricity that I had." (Docket No. 97, Exh. 2, p. 78) In addition, Mr. Piñeiro–Ruiz could not mention one specific instance where Mr. Rodriguez bypassed his instructions to the electricians on duty. (Docket No. 97, Exh. 4)[7] Furthermore, it is uncontested that none of his working conditions were altered. Again, Mr. Piñeiro–Ruiz fails to show any adverse action and, thus, cannot establish a *prima facie* case of discrimination.

Finally, Plaintiff contends that he was denied salary raises and merit step increases. During his deposition, however, he admitted that he was not recommended for a raise because he did not "go the extra mile." (Exh. 2, p. 117) In fact, he testified that "[t]here were many people, including me and many others who were not evaluated, who were not recommended and who did not receive the increase— salary increase." (*Id.*, pp. 28–29) Notwithstanding plaintiff's performance, and after reconsideration, plaintiff received the salary increase.

In conclusion, Piñeiro–Ruiz has failed to state a *prima facie* case of age discrimination under ADEA. Piñeiro only brings evidence of a few, specific age-related incidents which are either stray remarks or insufficient to allow an inference that they were motivated by a discriminatory animus based on Piñeiro's age. Piñeiro has also failed to provide enough evidence for a rational fact-finder to conclude that he suffered an adverse employment action as a result of discrimination based on age.

### D. *Supplemental Claims*

■ Because no federal claims on which to ground jurisdiction remain in this case, plaintiff's supplemental state law claims are dismissed **WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c)(3).

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's (Docket No. 80) Motion for Summary Judgment. Plaintiff's ADEA claims are dismissed **with prejudice.** Supplemental state law claims are dismissed **without prejudice.** Judgment shall enter accordingly.

**IT IS SO ORDERED.**

---

7. Q: Do you any way remember any specific ... now, today, remember any specific instances ... where Mr. William Rodriguez bypassed you give [sic] directions to employees you were supposed to supervised.

A: In this specific moment I don't remember any.(Docket No. 97–7, p. 10)